[No. 18240. Department One. January 2, 1924.]

THE STATE OF WASHINGTON, *on the Relation of F. N. Weyant, Respondent,* v. THE CITY OF SEATTLE *et al., Appellants,* A. H. GROUT, *Respondent.*[1]

APPEAL (87)—RIGHT TO APPEAL—INTEREST IN SUBJECT-MATTER. A civil service examiner who is left in full possession of his position has no appealable interest in a judgment determining the right of one of his associates, and cannot appeal therefrom.

APPEAL (102)—RIGHT TO APPEAL—CESSATION OF CONTROVERSY. In a proceeding to determine the right to a city office, the appeal of the officer will not be dismissed because of cessation of the controversy, on its appearing that he had accepted temporary employment outside of the state, where he had not abandoned his residence.

MUNICIPAL CORPORATIONS (65) — EMPLOYEES — REMOVAL — CIVIL SERVICE—PROCEEDINGS—ABANDONMENT OF RIGHTS. A civil service examiner, accepting a temporary appointment to fill the vacancy of chief examiner, does not lose his position by performing the duties of chief examiner for a short time longer than the law permitted, where it was done for the good of the service, and he could be considered as demoted under the rules.

JUDGMENT (229)—RES JUDICATA—MATTERS CONCLUDED. The rights of relator to a city office, as determined by a judgment under the existing conditions, is not *res adjudicata* in a subsequent proceeding, upon an entirely new situation arising.

MUNICIPAL CORPORATIONS (68)—EMPLOYEES — DISCHARGE — RECOVERY OF SALARY. Where a civil service examiner was wrongfully removed from office and his place filled by the two other examiners, who performed the duties of three, he is entitled, on being reinstated, to recover his back salary.

PARKER, J., dissents.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered May 29, 1923, restoring a city employee to office in a mandamus proceeding. Modified.

[1]Reported in 221 Pac. 997.

*Thomas J. L. Kennedy, George A. Meagher,* and *Frank M. Preston,* for appellants City of Seattle *et al.*

*Howe, Farrell & Meier,* for appellants Bean and Crell.

*Preston, Thorgrimson & Turner,* for relator.

*Louis E. Shela,* for respondent Grout.

TOLMAN, J.—This is an appeal from a judgment directing the issuance of a writ of mandate restoring relator to the position of examiner in the civil service department of the city of Seattle, directing the issuance of salary warrants to him for each month from and after January 1, 1923, and likewise directing the issuance of a salary warrant to respondent A. H. Grout for the month of December, 1922, with costs to each.

A somewhat detailed statement is necessary to an understanding of the issues involved. The charter of the city of Seattle contains an article embodying civil service provisions applicable to municipal employment. Section 16 of that article provides for the employment of a chief examiner, who shall be secretary of the civil service commission, with certain specified powers and duties. Respondent Grout served as such chief examiner from the time of the adoption of the present charter to August 31, 1920. At that time Grout resigned his position at the request of the commission. At and before that time, there were three regular positions of examiner in the department, held by relator, Weyant, under appointment of January 24, 1912, and appellants Bean and Crell, the former having been appointed April 12, 1920, and the latter April 24, 1920. At the time the vacancy occurred in the office of chief examiner, there was no eligible list from which a successor to Mr. Grout could be appointed, and appellant Bean was given a temporary appointment pending the

holding of the necessary examination of candidates, and at the same time was granted three months' leave of absence from his regular position as examiner. The charter provides for such temporary appointments to remain in force not exceeding sixty days, to prevent interference with the public business, and the rules of the commission provide for the granting of leave of absence not exceeding three months in duration. The commission did not hold an examination or procure an eligible list from which a chief examiner might be appointed until March 10, 1922, and in the meantime, by successive temporary appointments and successive leaves of absence from his regular position, Mr. Bean continued to serve as chief examiner.

The temporary appointment of Bean as chief examiner made at least a temporary vacancy in the position of examiner, and to supply the deficiency the commission attempted to place Mr. Grout in the position formerly filled by Mr. Bean, although he had never formerly held such a position, or qualified by taking an examination therefor, the then rule of the commission upon this subject being:

"The reduction of an employee from a higher to a lower grade of service may be made upon a showing to the commission of incapacity, inefficiency or misconduct, because of lack of work or funds, and only in case the employee in question was promoted from said lower grade."

Beginning with January 1, 1923, there were but two positions as examiner, because of the passage of an ordinance so reducing the number of examiners. Mr. Grout had been laid off in November, 1922, because of the return of Mr. Bean to the position of examiner, and the reinstatement of Weyant, who was first laid off on Bean's return, and the question was presented which of the three examiners, Weyant, Bean or Crell,

should continue in the two remaining positions. During a part of the six months' period preceding January 1, 1923, Mr. Weyant was not actually employed in the department because of the lay-off and the litigation arising therefrom between himself and the city. He returned to his position on November 8, 1922, and continued until the end of the year. Under the rules of the commission, efficiency ratings were given for quarterly periods, being recorded for June, July and August, 1922, and for September, October and November, 1922, but by whom prepared and from what evidence or data does not appear. During the first of these periods Mr. Weyant had no efficiency rating, because of his non-employment, but Mr. Bean and Mr. Crell were each rated at 84%. During the second period for the portion that Mr. Weyant was employed, he was given an efficiency rating of 76%, while Mr. Bean and Mr. Crell were given ratings during such second period of 86% and 80%, respectively. There was testimony to the effect that these efficiency ratings had been submitted to and approved by the commission, though their record shows no such approval.

Appellants contend that Mr. Weyant, having the lowest efficiency rating during the six months' period immediately preceding his lay-off, was, under § 7 of rule 10 of the civil service commission, the person to be dropped. The rule referred to is as follows:

"Whenever it becomes necessary in any department through lack of work or for other cause, to reduce the force, the person, if any, who may be serving in a temporary capacity in position in question, shall first be laid off, then those who have been regularly appointed, but who are serving their probationary period, after which lay-off of regular employees shall be made in order of efficiency ratings as shown by the Commission's records, those being laid off first who have the lowest average efficiency rating for the six months next

preceding the date of lay-off. If efficiency ratings are equal seniority shall control.''

It is further contended that the amendment to the civil service provisions of the city charter adopted in March, 1920, requiring that preference in employment be accorded to honorably discharged soldiers, sailors and marines of the United States who served in time of war, is applicable, and that Mr. Bean and Mr. Crell, each of whom is an honorably discharged soldier, were entitled to be retained in the employment in preference to Mr. Weyant, who could not qualify under that provision. Any other facts which are pertinent will be mentioned as we proceed.

We are met at the outset by a motion to dismiss the appeal of the appellants Crell and Bean; as to the first named, upon the ground that he has no appealable interest, and as to Bean upon the ground that there has been a cessation of the controversy. The motion must be granted as to the appeal of Crell. The judgment appealed from left Crell in full possession and enjoyment of his position and its emoluments, and notwithstanding the refusal of the trial court to find that his was a prior right as between the relator and himself, he now occupies one of the two positions, each of which, so far as appears, is equal in rank and authority. Neither relator nor anyone else is now threatening or questioning his rights, and the contention he presents is therefore, at this time, a moot one only.

The motion to dismiss the appeal by Bean must be denied, for there has been no cessation of the controversy as it relates to him. It has been made to appear here that, after the entry of the judgment below, in order to avoid the possibility of having to pay two men for one man's work, pending the appeal, the commission laid off Mr. Bean, and he, being unable to find suitable employment within the state, has accepted

employment outside of the state; but his showing is that his present employment is temporary only; that he has not abandoned his residence in the state and in the city of Seattle, and intends to and will return and resume his duties if and as soon as he is reinstated.

On the merits, it is first argued that appellant Bean lost his civil service standing as an examiner by serving for longer than three months as chief examiner. True, he served some eighteen months as chief examiner, but the record shows that each three months he returned to his duties as examiner for a day, drew only the pay of an examiner for that day, and received each time an additional three months' leave of absence. There may have been some slight irregularities in these proceedings, but there was no attempt made to show any bad faith, and, in the absence of bad faith, we are not inclined to condemn an arrangement entered into and carried out apparently for the good of the service. But even if the irregularities were greater, and made necessary the holding that Bean had abandoned and thus lost the position of examiner, yet, under the rule first herein quoted, as he had been promoted from the lower grade he could be, and we should be inclined to hold that he was, demoted to the grade which he first occupied. If this conclusion be correct, then we have Mr. Grout holding the temporary appointment—probably invalid because the so-called demotion was made in the teeth of the rule already quoted, and in spite of the fact that he had never occupied or been promoted from such lower grade—but temporary in any event, and limited by the lawful return of Mr. Bean to the duties of examiner. Mr. Grout being thus disposed of, we have Weyant, Bean and Crell each lawfully entitled to the position of examiner, and but two such positions remaining in

existence, thus making it incumbent upon the commission to dispense with the services of one.

It is urged that the commission was justified under § 7 of rule 10, which has been quoted, in applying the efficiency rule. That may be conceded, but the testimony is to the effect, and the trial court found, that the commission acted solely upon the advice of the corporation counsel, and his opinion, upon which the commission's action was based, was to the effect that the amendment to the city charter of March 2, 1920, which provides, "preference in employment shall at all times . . . . be given . . . . to honorably discharged soldiers, sailors and marines of the United States who have served in time of war."

The arguments of counsel as to the validity of and construction to be given to this provision have taken a wide range. Having in mind § 12, of Article I, of our state constitution, which forbids the granting to any citizen or class of citizens privileges or immunities which, upon the same terms, are not equally open to all other citizens, it at once becomes apparent that to sustain this provision there must be read into it the intent and meaning that persons of such preferred class who seek municipal employment must possess qualifications equal to those of others not so preferred, and so construed, there is good authority upon which to uphold it. *Shaw v. City Council of Marshalltown,* 131 Iowa 128, 104 N. W. 1121, 10 L. R. A. (N. S.) 825; 9 A. & E. Ann. Cas. 1039, and cases there cited. But it is not necessary to pass upon that question now, and notwithstanding anything here said we reserve our decision until the point is properly before us. Assuming, for present purposes, that the charter provision is valid as so construed, and that it relates to retention in the service as well as to original appointments, how does it affect our present problem? Clearly, in order

to justify the removal of Weyant, the commission must find that his qualifications no more than equal those of Messrs. Bean and Crell. As we have already seen, the record of the commission is barren of any finding upon this subject, and the trial court found with the overwhelming weight of the evidence:

"That no valid rating as to relator was made as to the six months previous to his removal, and said relator's rating is to be deemed equal to that of other persons interested in said position of examiner, and the said relator was laid off from said position without reference to the subject of rating, but because of the theory that his rights were inferior to that of honorably discharged soldiers and sailors, and for no other reason."

It is also urged that the judgment in favor of the relator in the prior mandamus proceeding is *res judicata,* but that judgment decided, and could only decide, relator's rights under the then existing conditions. It was performed and satisfied when relator was reinstated in November, 1922, and it could not prejudge an entirely new situation arising afterwards on January 1, 1923.

The city raises the question of the right to recover back salary from it, citing the cases of *Samuels v. Harrington,* 43 Wash. 603, 86 Pac. 1071, 117 Am. St. 1075, and *State ex rel. Powell v. Fassett,* 69 Wash. 555, 125 Pac. 963. In those cases it was held that the payment of the salary of the disputed office to the *de facto* officer was not a wrongful payment, and that such payment absolved the municipality from liability to the *de jure* officer, a doctrine to which we still adhere, although in *State ex rel. Wettrick v. Seattle,* 115 Wash. 548, 197 Pac. 782, we applied, by inadvertence, a rule applicable only to those cases where the deposed officer or employee is not superseded by another, but his duties are distributed among, and performed indis-

criminately by, others. In the *Wettrick* case, the attention of the court was directed to other and seemingly more vital issues, and the earlier cases just cited were not mentioned or discussed. It is, therefore, not surprising that counsel construed the *Wettrick* case as overruling the prior decisions; but such was not the intent of the court, and to avoid further confusion we acknowledge our error in the *Wettrick* case, and so far as it conflicts with the earlier cases already cited, it is hereby overruled. But even so, it does not follow that there was error in allowing a judgment against the city for relator's back salary. He was not removed and his place filled by another, but three positions were, by ordinance, reduced to two, relator was removed, and presumably thereafter the duties of the three were performed indiscriminately by the remaining two. That being so, judgment for the back salary is sustainable under *Foster v. Hindley,* 72 Wash. 657, 131 Pac. 197, and *State ex rel. Roe v. Seattle,* 88 Wash. 589, 153 Pac. 336.

But we think the trial court erred in directing the issuance of a salary warrant for December, 1922, to respondent Grout. As we have already seen, at the most his appointment was a temporary one, terminating on the return of appellant Bean to the position of examiner. Hence he was not unlawfully separated from the service and was entitled to no compensation except for the time he was actually employed. In this respect the judgment of the trial court will be modified, and in all other respects it is affirmed.

MAIN, C. J., HOLCOMB, and MACKINTOSH, JJ., concur.

PARKER, J. (dissenting)—I concur in the dismissal of Crell's appeal. I dissent from the conclusions of the majority affirming the judgment of the trial court to any extent. As I view the controversy, the civil

service commission was acting within its jurisdiction, and not so arbitrarily or capriciously as to enable the court to say that they, in effect, refused to exercise their honest judgment. Whether or not the civil service commission decided the controversy correctly upon its merits is, to my mind, of no concern to the courts. The problem is not a pure judicial one, but more in the nature of an administrative one, hence the decisions of the special tribunal, to wit, the civil service commission created by the charter for deciding such controversies, are final and not subject to review by the courts upon the merits; though, of course, the courts will interfere to see that the tribunal acts within its jurisdiction.

I am of the opinion that the judgment of the superior court should be in all things reversed and the disposition of the controversy left as decided by the civil service commission.