[No. 19060. Department Two. May 8, 1925.]

THE STATE OF WASHINGTON, *on the Relation of C. E. Raines et al., Appellants,* v. THE CITY OF SEATTLE *et al., Respondents,* A. H. FORCE, *Intervener-Appellant.*[1]

MUNICIPAL CORPORATIONS (65)—EMPLOYEES—TEMPORARY APPOINTMENT. Municipal street railway trainmen appointed to fill temporary vacancies pending examination, who were not qualified under the civil service rules of the city, did not, by continued employment, acquire any rights as permanent employees, as against certified eligibles.

SAME (65)—EMPLOYEES—APPOINTMENT—CIVIL SERVICE RULES—PREFERENCE IN SELECTION—POWERS OF CITY. A city of the first class has power to adopt charter amendments providing for civil service qualifications under constitutional regulations for employment and giving preference to citizens of the United States, electors of the city, and honorably discharged war veterans, which classification does not unlawfully restrict the exercise of discretion in the appointments.

CONSTITUTIONAL LAW (100, 102)—MUNICIPAL CORPORATIONS (65)—EMPLOYEES—CIVIL SERVICE—PREFERENCE IN EMPLOYMENT. Const., Art. 1, § 12, relating to equal privileges and immunities, is not violated by a city charter giving preference, subject to examination, to war veterans, as between candidates of equal standing.

MUNICIPAL CORPORATIONS (65, 88)—EMPLOYEES—QUALIFICATIONS—CIVIL SERVICE—PREFERENCE IN SELECTION. A charter provision giving an employment preference as between persons "equally qualified," means that all persons passing the test are equally qualified, regardless of their standing as shown by percentages (MACKINTOSH, J., dissenting).

[1]Reported in 235 Pac. 968.

Appeal from a judgment of the superior court for King county, Frater, J., entered September 20, 1924, dismissing an action for a writ of mandamus, after a hearing before the court. Affirmed.

*Ernest J. Hover,* for appellants.

*Thomas J. L. Kennedy* and *Frank M. Preston,* for respondents.

Holcomb, J.—The first named and about sixty other appellants, as relators, and the intervener, as a taxpayer of Seattle, waged this action to compel by mandate the civil service commission of Seattle and the superintendent of the municipal street railways of Seattle to retain in the employ of the city the relators, upon the ground that they were being unlawfully dismissed from employment as trainmen by reason of the unlawful operation of a "veterans' preference" conferred by charter amendment No. 11 of the civil service rules of Seattle. The intervener alleged as a taxpayer that the threatened dismissal of relators would result in great expense and injury to the city. Injunction was sought against respondent Henderson, as superintendent, to prevent him from putting into effect the preference given in accordance with the charter, and from suspending or discharging any of the appellants working under temporary appointments to make way for regular appointments from certification made to him by the civil service commission on July 25, 1924.

The court below sustained a demurrer to the petition of the intervener, and upon a hearing denied all relief to the relators.

On July 24, 1924, the superintendent of the street railways notified the civil service commission of ninety vacancies existing in the positions of trainmen in that department, whereupon the civil service commission

certified a list consisting of the first ninety-three names from its eligible list, of which the first sixty-six names were those of ex-service men who had passed the required examination. Prior to this certification of men who had passed the required examination, some eighty or ninety men, who later took the examination of May 28, 1924, were working as trainmen in a temporary capacity, pending the holding of the examination and certificate of the results thereof. Prior thereto none of these men had passed any examination for the positions held, or received any regular appointment to the positions by virtue thereof. As will later be seen by reference to § 10, art. 16, of the charter of Seattle, which will be set out, these men were merely temporary employees and were not qualified under the civil service provisions of the Seattle charter as permanent employees. Therefore, when an eligible list was made as required by the civil service provisions of the charter, these temporary employees were discharged in many instances, but some of them were appointed as regular employees pursuant to examination and certification. The petition of relators and the intervener seek to compel the civil service commission to certify as eligible for the position of trainmen the first ninety-three names having the highest percentage from the results of the examination, regardless of war service, and to grant ex-service men a preference only when the qualifications of the ex-service men were equal or superior to other eligibles on the list.

The pertinent sections of art. 16 of the Seattle charter, as amended by amendment No. 11, are as follows:

"Sec. 6. Examination; Subject Matter; Not Political or Religious; Appointment of Examiners; Com-

missioners May Act; Politics of Examiners; Examination Fee; Preferences:

"All applicants for offices or places in the classified civil service shall be subject to examination, which shall be public, competitive and open to all citizens of the United States with specified limitations as to residence, age, health, habits and moral character. Such examinations shall be practical in their character and shall relate to those matters which will fairly test the relative capacity of the persons examined to discharge the duties of the positions to which they seek to be appointed, and shall include, when appropriate, tests of physical qualifications, health, and manual or professional skill. No questions in any examination shall relate to political or religious opinion or affiliations. The commission shall control all examinations, and may, whenever an examination is to take place, designate a suitable number of persons, either in or not in the official service of the city, to be examiners, and if in the official service, it shall be a part of their official duty, without extra compensation, to conduct such examinations as the commission may direct and to make return and report thereof to the commission, and the commission may at any time substitute any other person, whether or not in such service, in the place of any one so selected. The commissioners may themselves act at any time as such examiners. The examiners at any examination shall not all be members of the same political party. Every applicant for examination, except laborers and applicants for promotion, shall pay to the city treasurer the sum of one dollar, and shall not be examined until he or she exhibits the treasurer's receipt therefor. Preference in employment shall at all times, subject to such examination, be given to citizens of the United States and electors of the city, and to honorably discharged soldiers, sailors and marines of the United States who have served in time of war."

"Sec. 8. Register of Persons Examined; Rank; Preference: From the returns or reports of the examiners, or from the examination made by the commission, the commission shall prepare a register for

each grade or class of positions in the classified service of the city of the persons whose general average standing upon examination for such grade or class is not less than the minimum fixed by the rules of such commission, and who are otherwise eligible; and such persons shall take rank upon the register as candidates in the order of their relative excellence as determined by examination, without reference to priority of time of examination: Provided that, as among persons qualified by examination under the provisions of this article, honorably discharged soldiers, sailors and marines of the United States who have served in time of war shall be placed at the head of the list of eligibles upon such register in the order of their excellence among themselves, as determined by said examination, and accorded preference of appointment, over the other eligibles thereon, to the respective positions for which they have qualified, as provided by this article. Subject to the foregoing proviso, between candidates of equal standing, preference shall at all times be given to citizens of the United States and electors of the city.''

''Sec. 10. Appointments in Classified Service; Notice of Vacancies; Certifying Eligibles; Number; Appointments on Probation; Inspection of Eligibles; Striking Names from Register; Discharge of Probationer; Emergency Appointments:—The head of the department or office in which the office classified under this article is to be filled shall notify the commission of any vacancy, and the commission shall certify to the appointing officer the names and addresses, together with notation of military, naval or marine service, if any of the three candidates, if there shall be so many eligible, standing first upon the register for the class or grade to which such position belongs, except that in cases of laborers where a choice by competition is impracticable, the commission may provide by its rules that selections may be made by lot from among those candidates proved fit by examination. Where there is more than one office to be filled, the commission may certify a less number than three for each office, and may also limit the number of times the same

person may be certified. The appointing officer shall notify the commission separately of each position to be filled, and shall fill such places by appointment from the persons certified to him by the commission therefor, which appointment shall be on probation for a period to be fixed by the rules. To facilitate the selection of appointees from the persons so certified, the appointing officer may require such persons to come before him, and shall be entitled to inspect such persons' examination papers, and may fill such positions by appointment from the persons so certified without regard to their order of certification, subject to the preference herein provided for. The commission may strike off the names of the candidates from the register after they have remained thereon for a time to be limited by rule. Before the expiration of the period of probation, the head of the department or office in which a candidate is employed may, by and with the consent of the commission, discharge him upon assigning in writing his reasons therefor to the commission. If he is not then discharged his appointment shall be deemed complete. To prevent the stoppage of public business, or to meet extraordinary exigencies, the head of any department may, with the approval of the commission, make temporary appointments to remain in force not exceeding sixty days, and only until regular appointments under the provisions of this article can be made.''

The last above provisions of § 10, above set out, in themselves would seem to justify the position of the trial court. Manifestly, the position of the ninety men appointed by superintendent Henderson were to fill vacancies. By the provisions of § 6 of the amendments, these places were to be filled from the qualified civil service. Appellants urge that these appointments, if originally temporary, to remain in force not to exceed sixty days, under the last provision of § 10 of amendment 11, after the expiration of the sixty-day period, they still remaining upon the employment roll as trainmen, were not to be longer considered as tem-

porary employees, but as permanent employees, and not to be discharged without cause. Such construction would evade the very objects of the civil service regulations. If they remained on the employment roll after the sixty-day period had expired, they simply remained by sufferance, and to construe them as permanent employees would be to violate the express provisions of the charter and disregard the civil service law. Their employment after that time, if not considered as re-employment by the city during the continuance of the emergency existing, must be considered as unlawful, and they would have no rights whatever as against any certified eligibles.

The case of *Johnson v. Pugh*, 152 Minn. 437, 189 N. W. 257, relied upon by appellants, does not sustain them. The temporary employee in that case was a war veteran whose appointment was under a veteran's preference law, which provided that no person entitled to its benefits who held a position by appointment or employment in any county, city or town in the state should be removed therefrom except for incompetency or misconduct shown after a hearing on due notice on stated charges, the burden of proving which incompetency or misconduct should rest on the party alleging it. It was in no sense a case presenting such a situation as exists in the case at bar.

Although, in our own opinion, relators have no standing under the civil service provisions of the charter of Seattle as employees, and are therefore not entitled to the relief prayed for in this case, the question is raised and urged, and as it will probably arise again, we feel it our duty to dispose of the validity of the various preference provisions of amendment No. 11 to the charter.

Appellants urge with great earnestness, citing a number of authorities to sustain them, and quote at

length from dissenting opinions in certain decisions, that the preference accorded in the charter amendment is special legislation and falls within the prohibition of § 12, art. I, of the constitution of Washington, which provides:

"No law shall be passed granting to any citizen, class of citizens, or corporation, other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

It is further urged that the enactment of charter amendment No. 11 as to the preference is not within the expressed or implied powers granted to a municipal corporation of the first class; and that the absolute preference accorded by the amendment unlawfully restricts the power of the appointing officer.

It should be remembered that, under the provisions of § 10, of art. XI, of our constitution, it is provided that, "Any city containing a population of twenty thousand inhabitants or more shall be permitted to frame a charter for its own government consistent with and subject to the constitution and laws of this state;".

This charter amendment was adopted by the people of Seattle and is a sort of local constitution of their own, subject, of course, to its being consistent with the constitution and laws of the state. Clearly, under that provision of § 10, of art. XI, of the constitution, the state delegated to cities such as Seattle plenary power to adopt a local constitution or charter for its local government. It remains only to determine, therefore, whether or not such legislation as was incorporated in the charter amendments in question was such as the city itself could enact through its legislature. The city, of course, cannot pass an unconstitutional law for its local government any more than the state

can. Undoubtedly, the city, the same as the state, has a right to provide for civil service qualifications under constitutional regulations for the employment of those working for the city.

In *Jahn v. Seattle,* 120 Wash. 403, 207 Pac. 667, we said that, " . . . the state and the various municipalities within it have the right to say that public work shall be done in any manner, at any price, and upon any terms they see fit to lay down. . . . These are matters which the people have the right to determine for themselves without interference by the courts, after they have spoken their will, as here, by the adoption of a charter and the passage of ordinances by their legislative representatives." There can be no question that the general provision of charter amendment No. 11 was within the powers of the electors of Seattle. Inasmuch as it is the charter or basic law of the city, it is upon a different basis than ordinances which would be in conflict with the basic law of the city, or the delegated powers of the city, or an act violating the provisions of the constitution by the legislature. For that reason many of the cases cited by appellants do not apply, since they are based upon infringement of constitutions by legislatures, or charters by city legislative bodies in enacting ordinances, and not to such cases as this.

We come, then, to the concrete question, does the provision in § 6, amendment No. 11, Seattle charter, reading: "Preference in employment shall at all times, subject to such examination, be given to citizens of the United States and electors of the city, and to honorably discharged soldiers, sailors and marines of the United States who have served in time of war," violate § 12, art. I, of our constitution? This preference is also referred to and prescribed in §§ 8 and 10 of the amendment. It will be noted that, by the general pro-

visions of amendment No. 11, all applicants for offices or places in the classified civil service shall be subject to examination, which is required to be public, and open to all citizens of the United States, with the limitations, as to residence, age, health, habits and moral character otherwise provided.

Many states have provided by statute that if veterans pass the examination they may be preferred in employment to non-veterans who have passed the same examination. In some states such preference of employment was limited to honorably discharged soldiers and sailors of the late Civil War, and afterwards amended to include honorably discharged soldiers and sailors of the Spanish War, which preferences were much more limited as to class and not applying upon the same terms to *all* honorably discharged soldiers and sailors.

In *Shaw v. Marshalltown,* 104 N. W. (Iowa) 1121, 10 L. R. A. (N. S.) 825, a law containing such special preference was sustained. The provision of the constitution of Iowa is almost identical with that of ours respecting class legislation. The majority opinion analyzed the principles involved very logically and reviewed and considered most of the cases, if not all, upon the question there involved, and the general question involved here.

We referred to that case in *State ex rel. Weyant v. Seattle,* 127 Wash. 681, 221 Pac. 997, and to § 12, art. I, constitution, and intimated that, to sustain the provision of this same charter amendment as to preference to ex-service men, it would be necessary to read into it the intent and meaning that persons of such preferred class who seek municipal employment must possess qualifications equal to those of others not so favored. Appellants quote that statement, and in their argument suggest that if it is necessary, in order to

sustain this amendment, to read into it such provision, it is doubtful if, under rules of constitutional law, this court has any such authority; citing *Rudin v. King-Richardson Co.*, 311 Ill. 513, 143 N. E. 198, to the effect that the supreme court has no authority to read language into a statute which is not placed there by the legislature. But on further consideration, we conclude that it is not reading into the charter amendment anything that is not already there to say that the plain intent and meaning of it is that the preferred class must possess qualifications equal, that is, practically equal, to those of others not so favored. The provisions of the amendment must be considered as a whole. As a whole, they require that an examination be had, and that the eligibles shall consist of those passing such examination. The provisions for examination, certification and selection of employees thereunder are very comprehensive, and at the same time very fair, unless it be that preference in employment shall at all times be given, "subject to such examination, to citizens of the United States, and electors of the city, and to honorably discharged soldiers, sailors and marines of the United States who have served in time of war."

Having determined that the amendment, in general, is within the power of the city to adopt, under the constitution, unless this preference be in conflict with art. I, § 12, the question is very much narrowed.

The law writers generally say that such provision, under such a constitutional limitation, is valid.

19 R. C. L., p. 755, in the article on muncipal corporations, has the following statement of the law:

"Several of the civil service acts have sought to favor honorably discharged Union soldiers and sailors who fought in the civil war in the matter of appointments. This has been attempted in two ways: (1) by

exempting such veterans entirely from taking examination; and (2) by preferring them in the making of appointments after they have passed the examination and been placed on the eligible list. The first method has very generally been declared unconstitutional. It is inconsistent with the nature of our government, and particularly with those provisions of the constitution which deny special privileges to any one class of men, that the appointing power should be compelled by legislation to appoint to public offices persons of a certain class, in preference to all others, without the exercise on its part of any discretion, and without the favorable judgment of some legally constituted officer or board designated by law to inquire and determine whether the persons to be appointed are actually qualified to perform the duties which pertain to the offices. On the other hand, statutes which provide that if such veterans pass the civil service examinations they shall be preferred in appointment to all persons not veterans have generally been upheld, on the ground that the legislature may have thought that a person who has served in the army or navy of the United States in time of war would be likely to possess courage, constancy, habits of obedience and fidelity, which are valuable qualifications for any public office or employment, so that if he is otherwise qualified to perform the duties of the office, he might reasonably be preferred over others who had not demonstrated their possession of such qualities.''

The above statement of the law and our examination of the cases supporting it, decide adversely to the contention of appellants here that the preference clauses in the Seattle charter prevent, on the part of the appointing officer, the exercise of any discretion. Under these authorities, and under ordinary principles applicable thereto, the discretion of the appointing officer may be limited and restrained, since such officer may not, in all cases, be granted unlimited discretion to appoint any and all persons he may see fit.

1 Dillon on Municipal Corporations (5th ed.), § 408, is as follows:

"The civil service laws of many states contain provisions to the effect that *preference of appointment* shall be given to honorably discharged soldiers and sailors of the late Civil and Spanish Wars. This preference has in New York been guaranteed by constitutional provision. It has been held that the legislature cannot *constitutionally enact that public offices,* which it has created, *shall be filled by veterans in preferment to all other persons,* whether the veterans are or are not found, or thought, to be actually qualified to perform the duties of the offices by an impartial and competent officer or board charged with a public duty in making the appointments. The fact that a person is a veteran has usually little or no relevancy in determining his fitness for employment under the state or municipality, and it is not within the power of the legislature to confer an absolute right upon the class of persons to a preferential appointment to office irrespective of the qualifications which they may possess. But the legislature may provide that if veterans pass the examinations as to qualifications to which all candidates for appointment to office are subject, they shall be preferred in appointment to all male persons not veterans. The principle upon which this decision is rendered is that when the qualifications of veterans have been ascertained by examination, the legislature may, by virtue of its discretion to regulate appointment to office, provide that of those whose competency for the position has been ascertained, a veteran shall be preferred in appointment to the office."

In *Barthelmess v. Cukor,* 231 N. Y. 435, 132 N. E. 140, 16 A. L. R. 1404, under a statute of New York giving preference in promotion to veterans of the Civil War, it was held that it violated art. V, § 9, New York constitution, because it granted a preference based upon military service other than in the Civil War. In a case note appended to that opinion, *supra,* p. 1409, the editors say:

. "Generally it seems that the validity of the statute preferring certain persons, on account of military or naval service, for appointment or promotion in the civil service of the state, depends on the character of the preference given. If, in a jurisdiction where a civil service law exists, an absolute right to appointment or promotion is given to veterans, without regard to the competency or fitness of the applicant to perform the duties of the position sought by him, or without requiring him to take an examination therefor, the statute is deemed to be invalid on the ground that, in thus creating a favored class, it violates the constitutional guarantee of equality of privileges and immunities. . . . If, however, the statute requires a veteran to be examined in the same manner as other applicants, and merely gives a preference for appointment over all other qualified persons, it is constitutional."

In Illinois, under a similar constitutional limitation to ours, in *People ex rel. Sellers v. Brady*, 262 Ill. 578, 105 N. E. 1, the eminent supreme court of that state held that a civil service act providing for preference of honorably discharged soldiers and sailors who have served in the Civil War is not invalid as an arbitrary class regulation. In the discussion of the case the court announced the general rule which we have always followed, that, "If an ordinance or statute is susceptible of two constructions, that construction should be adopted which will sustain its validity or constitutionality." The court further observed:

"This court has frequently said that if all laws were held unconstitutional because they did not embrace all persons few would stand the test; that a law is general, not because it embraces all the governed, but that it may from its terms, when many are embraced in its provisions, embrace all others when they occupy like positions to those who are embraced. A law that is made applicable to a certain class or classes of citizens must be based upon some substantial difference be-

tween the situation of that class or classes and other individuals or classes to which it does not apply. . . . There is a substantial difference existing under this law as to the classification of officers and employees complained of. Very similar classifications as to exemption are made in the City Civil Service Law, and, while all the objections here raised do not seem to have been passed upon by this court, no one has heretofore questioned the reasonableness of such classification. There is, however, one of these exemptions that is specifically referred to in the briefs, and authorities are cited from other jurisdictions to show that this exemption is unconstitutional. That is with reference to the provision under section 10 that persons who were engaged in military or naval service in the Civil War and have been honorably discharged, having passed the examination, shall be preferred for appointment to civil service positions, provided they are found to possess business capacity necessary for the proper discharge of the duties. It is stated that similar provisions have been held unconstitutional by the highest courts of New York and Massachusetts. In this, we think, counsel are in error.''

The court then proceeds to analyze the cases cited by counsel to sustain that contention, which include many of the cases cited by counsel in this case. The court then cited several cases to sustain the validity of such preference, among others, that of *Shaw v. Marshalltown, supra,* cited herein, and Dillon on Municipal Corporations, *supra,* the court then concluding:

''As there are no qualifications prescribed by our Constitution on this question conflicting with the provisions of the State Civil Service Law with reference to the honorably discharged soldiers and sailors, the law in this regard must be held constitutional.''

Although appellants in this case demanded that the certificates of eligibility for appointment to these positions be made upon the qualifications as shown by the

examination and percentages shown therein, that is, in the language of the petition, "the first highest ninety-three (93) names resulting from such competitive examination of May 28, 1924," etc., in answer to argument of counsel for respondents that "equally qualified," under the charter amendment and under the general principles of law, should not be taken to mean absolute equality or exact mathematical parity upon the examination, but should be understood to mean that any and all persons who have passed the required test and obtained the minimum percentage necessary should be certified as eligibles, then all such persons are equally qualified no matter what their comparative standing is as shown by the percentages, and that the preference in favor of ex-service men should apply, regardless of exact equality of percentages.

In reply thereto counsel for appellants disclaimed that they urged any such narrow construction of "equal qualifications"; but continued to argue that the equality of qualifications is disclosed by a written examination, and should be decided thereon and without reference to the preference clauses of the charter.

We agree with respondent that exact mathematical equality, or superiority, in percentages is not required, nor can it be positively attained by any system of human tests. No one knows better than one who has "kept school," as the saying is, or been an examiner of any kind in tests of the qualifications of applicants, how impossible it is to be exactly and mathematically correct. A certain element of liberality, or of the contrary, is very difficult to avoid, and if there is to be a variance between the exact mathematical percentages, it is of small moment whether the variance is one-half of one per cent or fifteen per cent. One making a lower grade on examination often proves much more

efficient in performing the duties contemplated than one making the higher percentage.

One of the provisions of amendment 11, particularly § 10 thereof, relied upon by appellants herein, reads:

" . . . to facilitate the selection of appointees from the persons so certified, the appointing officer may require such persons to come before him, and shall be entitled to inspect such persons' examination papers, and may fill such positions by appointment from the persons so certified *without regard to their order of certification, subject to the preference herein provided for.*" (Italics ours.)

The above provision also answers very largely the contention of appellants that the appointing officer was unduly restricted by the provisions of the amendment.

The supreme judicial court of Massachusetts, at a time when it included the eminent Justice Holmes, now of the United States supreme court, passing upon the constitutionality of such a statute under the equal rights clause of their constitution, sustained it; *Opinion of the Justices,* 166 Mass. 589, 44 N. E. 625, 34 L. R. A. 58; and in so doing made these observations:

"Before the enactment of the civil service statutes the qualifications of the persons to be appointed or employed in the offices and employments covered by these statutes usually were left to be ascertained by the appointing power in such manner as it saw fit. The effect of this section is to permit veterans to be appointed to office or employment in the old way, if it seems best to the power having the right of appointment. It may be that the general court [the Massachusetts legislative body] was of the opinion that there were certain offices and employments in which it was important that the appointee should have the qualifications usually found in veteran soldiers and sailors; and that the good of the public service would be promoted by giving this discretion to the appointing power. Undoubtedly this, like the preceding section,

gives a certain advantage to veterans over other persons, in being appointed to office or employment, but the section implies that the veteran to be appointed shall be found qualified by the appointing power in its own way, and it was not intended to provide for the appointment of veterans who are not qualified to perform the duties pertaining to the office or employment which they seek. The section does not necessarily exclude the appointment of other persons if the appointing power is of the opinion that the appointment should be made under the civil service statutes and rules. We cannot say that this section is an enactment beyond the constitutional power of the general court.''

The above reasoning applies forcefully to the situation at bar, except that here the qualifications must be ascertained by following prescribed regulations, applicable to all.

For the foregoing reasons we conclude that the veteran preference clauses in amendment 11, Seattle charter, are not void as infringing upon § 12, art. I, constitution, and are not beyond the legislative powers of the municipality to enact.

The demurrer to the complaint of the intervener was, therefore, correctly sustained, and the trial court was right in denying any relief to appellants.

TOLMAN, C. J., FULLERTON, and MITCHELL, JJ., concur.

MACKINTOSH, J. (dissenting)—While I agree with what is said in sustaining the charter provision relating to preference to veterans, I cannot agree with the interpretation of that provision to the effect that all persons passing a competitive examination, no matter what their standing in such examination, are "equally qualified." It seems to me that qualification is to be determined by the relative standing upon such examination, and if that is true, then some of the appellants, having obtained a higher percentage in

the tests, are more qualified for the positions than are those of the preferred class whose standing is lower. I conclude, therefore, that as to certain of the appellants they are entitled to the relief they seek, and I therefore dissent.