[No. 21202.  Department Two.  August 15, 1928.]

THE STATE OF WASHINGTON, *on the Relation of B. H. Beebe, Respondent,* v. THE CITY OF SEATTLE *et al., Appellants.*[1]

[1] MUNICIPAL CORPORATIONS (65)—EMPLOYEES—CIVIL SERVICE—PREFERENCE IN EMPLOYMENT. A veteran of the World War, employed under municipal civil service rules, is entitled to preference, in case of enforced lay-offs, irrespective of his efficiency rating, under Seattle charter, art. XVI, §§ 6 and 8, as amended in 1920, which provide for preference at all times to discharged veterans and that they shall be placed at the head of eligibles in the order of excellence among themselves, and accorded preference over other eligibles irrespective of positions for which they have qualified.

Appeal from a judgment of the superior court for King county, Moriarty, J., entered December 21, 1927, in favor of the relator, in mandamus proceedings to enforce a veteran's preference in employment under civil service rules. Affirmed.

*Thomas J. L. Kennedy* and *A. C. Van Soelen,* for appellants.

*Dwight N. Stevens* and *Philip Tworoger,* for respondent.

HOLCOMB, J.—The facts are substantially unconflicting.

Respondent is an honorably discharged veteran of the late World War. During the year 1920, he was employed by the city of Seattle as a "trainman" (a term which includes motormen, conductors and operators who perform the duties of both motormen and conductors on one-man cars), in the department of public utilities, division of municipal railways. His appointment was in accordance with the civil service provi-

[1]Reported in 269 Pac. 850.

sions of the Seattle charter, and he was accorded the preference in employment thereby provided for veterans. His duties were those of conductor on the municipal railway; and for more than three years prior to January 12, 1927, he had been employed on a "regular run" and provided with regular employment at the rate of approximately one hundred and fifty dollars a month.

There are three classes of trainmen: First, those employed on regular runs, who have regular hours and steady employment; second, those listed on the "extra board" whose services are used to fill vacancies due to the absence of regular men, and whose hours are irregular but who are guaranteed a minimum salary of one hundred and thirty-five dollars a month; third, "part time" trainmen, who are employed only a few hours a day, principally when traffic is at its peak, and who are paid by the hour for the number of hours they work, without any guarantee. The third class ordinarily constitutes the least desirable employment.

It is part of the system of civil service in Seattle that employees are rated on a percentage basis in accordance with their proficiency or efficiency. These ratings are made and revised every three months by the department head. An efficiency rating less than seventy-five per cent represents a standard of service, capacity and conduct below any reasonable requirement for retention in the service (Rule VII, § 2, Civil Service Rules). Respondent's rating for the last rating period prior to January 12, 1927, was 86.66 per cent.

On January 12, 1927, respondent and a number of others were laid off by reason of lack of funds and lack of work; respondent being, however, retained in the service of the city as a part-time trainman. The moving cause of the lay-off was an enforced reduction of

carman operating expense, many two-man cars being
thereafter operated by one man who performed the
duties of both motorman and conductor. It is conceded
that respondent's lay-off was in good faith, without
fraud, and in accordance with § 5, rule X of the civil
service rules of Seattle, which provides, in brief, that
whenever a lay-off becomes necessary, probationary
employees shall first be laid off, then regular em-
ployees in accordance with their relative efficiency rat-
ings for the last two rating periods, with certain credits
for seniority, or length of service; the persons having
the lowest efficiency ratings are first laid off.

Among those laid off at the same time as respondent
were trainmen of higher efficiency ratings than re-
spondent, and it is conceded that those retained all had
higher ratings than respondent. Respondent, how-
ever, contends, and the trial court held, that he is en-
titled, as a veteran of the World War, to preference in
retention in employment on a regular run irrespective
of relative efficiency ratings, and that the provisions
of the Seattle charter [article XVI, § 6] giving pref-
erence "at all times" to honorably discharged soldiers,
sailors and marines of the United States who have
served in time of war, should govern lay-off and demo-
tion.

Respondent previously made timely complaint to the
civil service commission; the commission accorded him
a hearing, but refused him any relief. At all times
since his reduction in status, and at the present time,
respondent is still a regular civil service employee of
the city, employed in the same line of work as before,
but his remuneration is less, and the hours of work are
not so desirable. The difference in his compensation
for a period of some eleven months from the time of
lay-off to the trial in the lower court was found by the

trial court to be the sum of four hundred and forty dollars.

Respondent brought suit in mandamus to compel his restoration to a regular run and for the difference in salary. Appellants made return to the alternative writ of mandate by general demurrer and answer, including an affirmative defense, setting forth that respondent was reduced from regular to part-time employment by reason of lack of work and lack of funds, and that he was "laid off" from regular employment in accordance with his relative efficiency rating with other employees affected.

It is conceded that respondent was laid off from regular employment without regard to the veterans' preference provision of the city charter, if the same applies to lay-offs. The trial court found that the above provision applied and entered judgment for respondent.

[1] The question presented is solely one of law: Does the veterans' preference provision of the Seattle charter apply to lay-off or reduction in status and salary necessitated by lack of work and lack of funds?

Pertinent portions of the Seattle charter in question are as follows:

"All applicants for offices or places in the classified civil service shall be subject to examination, which shall be public, competitive and open to all citizens of the United States with specified limitations as to residence, age, health, habits and moral character. Such examinations shall be practical in their character and shall relate to those matters which will fairly test the relative capacity of the person examined to discharge the duties of the position to which he seeks to be appointed, and shall include, when appropriate, tests of physical qualifications, health and manual or professional skill. No questions in any examination shall relate to political or religious opinion or affiliations. The commission shall control all examinations, and may,

whenever an examination is to take place, designate a suitable number of persons, either in or not in the official service of the city, to be examiners, and if in the official service, it shall be a part of their official duty, without extra compensation, to conduct such examinations as the commission may direct and to make return and report thereof to the commission, and the commission may at any time substitute any other person, whether or not in such service, in the place of any one so selected. The examiners at any examination shall not all be members of the same political party. Every applicant for examination, except laborers and applicants for promotion, shall pay to the city treasurer the sum of one dollar, and shall not be examined until he or she exhibits the treasurer's receipt therefor. Preference in employment shall at all times, subject to such examination, be given to citizens of the United States and electors of the city, *and to honorably discharged soldiers, sailors and marines of the United States who have served in time of war.*"

Article XVI, § 6, as amended March 2, 1920.

Prior to the amendment of 1920, this section read as above without the italicized portion of the last sentence.

"From the returns or reports of the examiners, or from the examination made by the commission, the commission shall prepare a register for each grade or class of positions in the classified service of the city of the persons whose general average standing upon examination for such grade or class is not less than the minimum fixed by the rules of such commission, and who are otherwise eligible; and such persons shall take rank upon the register as candidates in the order of their relative excellence as determined by examination without reference to priority of time of examination: *Provided that, as among persons qualified by examination under the provisions of this article, honorably discharged soldiers, sailors and marines of the United States who have served in time of war shall be placed at the head of the list of eligibles upon such register in the order of their excellence among themselves, as de-*

*termined by said examination, and accorded prefer-
ence of appointment, over the other eligibles thereon
to the respective positions for which they have quali-
fied, as provided by this article. Subject to the fore-
going proviso,* between candidates of equal standing,
preference shall at all times be given to citizens of the
United States and electors of the city." Article XVI,
§ 8.

Section 8, prior to the amendment of March 2, 1920,
read as follows:

"From the returns or reports of the examiners, or
from the examination made by the commission, the
commission shall prepare a register for each grade or
class of positions in the classified service of the city
of the persons whose general average standing upon
examination for such grade or class is not less than the
minimum fixed by the rules of such commission, and
who are otherwise eligible; and such persons shall take
rank upon the register and candidates in the order of
their relative excellence as determined by examination
without reference to priority of time of examination.
Between candidates of equal standing, preference shall
at all times be given to citizens of the United States
and electors of the city."

Respondent rests his contention on the italicized
portions of §§ 6 and 8, article XVI of the city charter
above quoted.

We have upheld the veterans' preference provisions
of the 1920 amendment to the Seattle charter. *State
ex rel. Raines v. Seattle,* 134 Wash. 360, 235 Pac. 968.

Appellants contend that, if the clause "preference
in employment shall at all times, subject to such exam-
ination, be given  . . ." applies to lay-off as well as
original employment, it must be true that the same
words extended the same preference previous to the
1920 amendment, to electors of Seattle.

The very terms of §§ 6 and 8, article XVI of the
charter contravene that contention. Section 6 pro-

vides for "preference in employment" at all times, to citizens and electors, and to honorably discharged soldiers, sailors and marines of the United States who have served in time of war." Section 8, in brief, provides for such preference first to be accorded to such soldiers, sailors and marines, and then provides that "subject to that preference," "preference shall at all times be given to citizens, etc."

We cannot concur in the contention of appellants that the veterans' preference provisions relate only to original appointment. The terms used in the charter amendment of 1920 mean more than that or they can be easily evaded.

Certainly they are intended to comprehend retention in employment when other charter conditions as to qualifications exist as they are presumed to exist here. "Employment," as used in these charter provisions, means state of being employed; retained in employment.

Judgment affirmed.

FULLERTON, C. J., ASKREN, MAIN, and BEALS, JJ., concur.