[No. 33328.   Department One.   November 25, 1955.]

THE STATE OF WASHINGTON, *on the Relation of Virgil O. Ford et al., Respondents,* v. KING COUNTY *et al., Appellants.*[1]

¹Reported in 290 P. (2d) 465.

*Charles O. Carroll* and *V. D. Bradeson,* for appellants.

*Wright & Wright,* for respondents.

DONWORTH, J.—This is a mandamus action brought by two former county employees against King county, its commissioners, and the manager of the county airport to compel their reinstatement as employees and to recover back pay. The trial court entered a judgment granting the relief prayed for, and the county and its officers have appealed.

There is no dispute as to the material facts. No error is assigned to the findings of fact. The errors claimed relate solely to seven conclusions of law entered by the trial court. These assignments of error raise one principal question of law, to wit, the proper interpretation and application of the veterans' preference act (RCW 73.16.010 and 73.16.015) to the facts of this case.

The two former county employees (herein referred to as respondents) are honorably discharged soldiers of the United States, having served during the first World War.

In 1947, the county inaugurated a fire and security protection force under Leo H. Smith, as chief security officer, to patrol the King county airport (Boeing Field). At that time, the force consisted of five men besides Smith. The number of persons so employed was later increased from six to twelve. One appellant was first employed in 1949, and the other in 1950. Both were dismissed, effective December 31, 1953, when the force was reduced from twelve men to six in an economy move after a number of airlines had discontinued using the county airport.

The county's method of selecting the men to be retained and those to be dismissed is described in finding No. 5, as follows:

" . . . That of those discharged on December 31, 1953 three persons, including the relators, were veterans and

three persons were non-veterans. That of those retained in employment on December 31, 1953 three were veterans and three were non-veterans. That all six retained employees were senior in service as firemen and patrolmen to the relators, all six retained persons having been employed in 1947, while the relator Ford was employed in 1949 and the relator Mann in 1950. That one discharged employee was discharged for health reasons, with the promise by the chief in charge of employment that upon restoration of his health he would be re-instated to displace one of the six retained employees, and that this discharged employee for health reasons was junior in point of service as Fireman and Patrolman to both relators, although he had been injured in county employment at another job at King County Airport. That the chief in charge of employment of firemen and patrolmen, acting under the authority of the respondent Witten, considered that in selecting the individuals to be retained and to be discharged he was applying principles of seniority in service."

The veterans' preference act was originally enacted in 1895 (Laws of 1895, chapter 84, § 1, p. 166), and has, with certain minor amendments, been continuously in effect in this state for sixty years. As last amended (Laws of 1951, chapter 29, p. 59), the act now reads:

"Section 1. Section 73.16.010 of the Revised Code of Washington derived from section 1 of chapter 84 of the Laws of 1895 as last amended by section 1 of chapter 141 of the Laws of 1943 is hereby amended to read as follows:

"In every public department, and upon all public works of the state, and of any county thereof, honorably discharged soldiers, sailors, and marines who are veterans of any war of the United States, or of any military campaign for which a campaign ribbon shall have been awarded, and their widows, shall be preferred for appointment and employment. Age, loss of limb, or other physical impairment, which does not in fact incapacitate, shall not be deemed to disqualify them, provided they possess the capacity necessary to discharge the duties of the position involved.

"Sec. 2. Any veteran entitled to the benefits of this act may enforce his rights hereunder by civil action in the courts."

Parenthetically, the addition of § 2 was apparently prompted by our decision in *State ex rel. Breslin v. Todd,* 8 Wn. (2d) 482, 113 P. (2d) 315.

The basic language of the act, providing that "In every public department, and upon all public works of the state, and of any county thereof, honorably discharged" ex-servicemen designated therein "shall be preferred for appointment and employment," provided they possess the capacity necessary to discharge the duties of the position involved, has appeared in each of the four amendments of the 1895 law.

Appellants' main contention that the trial court erred in holding that the act applied to respondents is founded on the theory that nonveteran employees had seniority rights to employment by the county, and that such rights are equivalent to an employee's status under the classified civil service laws or charter provisions. Numerous decisions of this and other courts of last resort are cited and analyzed which relate to such civil service situations.

We are unable to find that such decisions have any bearing on the problem before us, because the county has no civil service system. Appellants' witness, Smith, testified that the county could hire and discharge employees at will. Even in the absence of such testimony, we think that the courts could take judicial notice of the fact that the counties of this state operate under the patronage system, and have no civil service system.

This being the situation, county employees have no seniority status by law or contract, nor by any custom having the force of law. Appellants endeavored to prove that, when a reduction in the number of employees became necessary, it was the county's policy to dismiss first the persons who had been most recently hired. Conceding that such policy existed, the employees had no vested rights under it. The county could follow that policy one day and abandon it the next without legal cause for complaint on the part of the employees affected thereby.

The only statutory rights involved are the rights of respondents under the veterans' preference act. The nonveteran county employees have no right to any particular method of selection for employment or for retention in employment.

Appellants further assert that a municipal corporation, such as the county, may abolish jobs in the interests of economy, and that this may be done even when the incumbents are veterans entitled to preference under a statutory or charter provision. There is no doubt as to the soundness of this legal proposition, but here there were twelve jobs of identical character, of which six were abolished for reasons of economy. The question under such circumstances is, do veterans have a preference in the retention of employment over nonveterans?

The act states that the veterans described therein "shall be preferred for appointment and employment." We have construed the phrase "preference in employment" as used in the Seattle city charter as meaning a preference not only in the selection at the inception of the employment but also in the continuance or retention of such employment. *State ex rel. Beebe v. Seattle,* 148 Wash. 565, 269 Pac. 850. We also held in that case that " 'Employment' as used in these charter provisions, means state of being employed; retained in employment."

In our opinion, the word "employment" in the veterans' preference act has the same meaning there as it has in the Seattle city charter, and thus includes within its connotation "retention in employment." Consequently, respondents, under the facts found by the trial court, were entitled to continued employment in preference to the nonveterans even though these latter had been employed by the county for a longer period of time.

There remains to be considered appellants' contention that the trial court erred in awarding back pay to respondents, because they did not offer proof as to what earnings they had received in other employment since the termination of their employment by the county. On this issue, appellants invite our attention to an annotation in 150 A. L. R. 100, and to the cases cited therein. The author of that note states, at the bottom of page 120:

"3. *Burden of proof in regard to public employee's duty to mitigate damages.*

"It is the accepted doctrine in the great majority of juris-

dictions that the burden of establishing by affirmative evidence the existence of any circumstances which would entitle the government to a mitigation of the damages suffered by the public employee by his wrongful removal from his position lies on the government. This rule applies equally to actual and potential earnings of the public employee."

No decisions of this court are there cited as bearing on this question, but decisions of eight other states are cited in support of the text quoted above.

■ We are in accord with what is there described to be the weight of authority, and hold that appellants had the burden of proving mitigation of damages as a defense in this case. No such defense was pleaded by appellants, and no evidence was offered by them that either respondent had earned wages at other employment after their wrongful dismissal by the county. The trial court committed no error in allowing recovery of back pay according to the county wage scale.

The essential elements of the public policy of this state on the subject of veterans' preference in public employment, as declared in the enactments of the legislature, have remained substantially unchanged for sixty years. Any change in that policy must come from the legislature and not from the courts. Until a change is made, it is the duty of the courts to apply the language of the veterans' preference act to the facts of each case as it is presented.

■ In the case at bar, neither the veteran employees nor the nonveteran employees of the county have any vested right to public employment. *Jahn v. Seattle,* 120 Wash. 403, 207 Pac. 667, and *State ex rel. Raines v. Seattle,* 134 Wash. 360, 235 Pac. 968. But, while respondents have no vested right to public employment, the legislature has given them a preferential right to appointment and employment in public work over nonveterans, and has specifically afforded them the right to enforce this preference by court proceedings. This is the legal basis for the distinction between these two classes of public employees.

Finding no error in the conclusions of law to which appellants have assigned error, the judgment of the trial court is affirmed.

HAMLEY, C. J., SCHWELLENBACH, FINLEY, and OTT, JJ., concur.