[No. 3233-1.    Division One.    July 12, 1976.]

LEIF H. BJORSETH, ET AL, *Respondents*, v. THE CITY OF SEATTLE, ET AL, *Appellants*.

*John P. Harris, Corporation Counsel,* and *E. Neal King, Assistant,* for appellants.

*Siderius, Lonergan & Crowley* and *C. R. Lonergan, Jr.,* for respondents.

SWANSON, J.—On April 30, 1974, approximately 135 non-resident employees of the City of Seattle brought suit against the City and its Civil Service Commission alleging that rule 10.03[1] of the Seattle Civil Service Commission

___

[1]On July 19, 1974, the Superior Court for King County entered its order directing summary judgment in the present case invalidating

should be declared null and void, that the City should be enjoined from using residence within the city of Seattle as a preference when laying off employees, and that the City should be enjoined from excluding nonresidents from taking promotional examinations. In effect, the employees challenge the validity of the entire residence preference system as utilized by the Seattle Civil Service Commission alleging it to be in contravention of RCW 35.21.200.

The trial court, after hearing motions for summary judgment on behalf of both parties, partially granted and partially denied the respective motions:

> IT IS ORDERED, ADJUDGED AND DECREED that RCW 35.21.200 prohibits The City of Seattle from considering residency or nonresidency of a regularly appointed civil service employee in determining the order in which layoffs are to be made, and
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that in all other respects the residency preferences and qualifications for positions in the classified civil service of The City of Seattle, except for the one year durational por-

Civil Service Rule 10.03 as it pertained to residency requirements. Subsequently, on August 15, 1974, appellant City of Seattle filed its notice of appeal with this court. Between the time of filing that notice of appeal and oral argument before this court, the Civil Service Commission of the City of Seattle amended rule 10.03 to exclude any reference to residency as a criterion for layoff. Inasmuch as the amendment of the civil service rule in controversy has, in effect, eliminated the instant controversy, an issue of mootness is presented to this court. However, because the issues raised by the pleadings are of general public import and are likely to recur elsewhere, we deem it appropriate to consider this appeal on its merits. *Grays Harbor Paper Co. v. Grays Harbor County*, 74 Wn.2d 70, 442 P.2d 967 (1968); *Deaconess Hosp. v. State Highway Comm'n*, 66 Wn.2d 378, 403 P.2d 54 (1965).

The original Civil Service Rule 10.03 appears in relevant part as follows:

> a. In a given class in a department, the following shall be the order of layoff:
>
> . . . .
>
> (4) Regular employees in the order of their length of service, the one with the least service being laid off first.
>
> b. Residence Preference: In each group of regular appointees or regular employees being considered for layoff, an employee who is nonresident shall be laid off before a resident employee.

tion of the residency preference provisions contained in the Charter of said City, which are provided in said Charter and the rules of the Civil Service Commission of said City or which are established by the Civil Service Commission in accordance with said Charter and rules, are hereby determined and declared to be valid and in full force and effect . . .

The City of Seattle appeals from that portion of the summary judgment prohibiting the City from considering residency in determining the order of layoffs. Respondents cross-appeal as to that portion of the summary judgment declaring residency preferences to be valid in all other respects.

The issue presented to this court is whether the City of Seattle may consider the residency of its employees as a criterion in determining the order in which those employees are to be laid off. To decide this question, we first consider the importance of RCW 35.21.200 which states in part,

Any city or town may by ordinance of its legislative authority determine whether there shall be any residential qualifications for any or all of its appointive officials or for preference in employment of its employees, *but residence of an employee outside the limits of such city or town shall not be grounds for discharge of any regularly appointed civil service employee otherwise qualified* . . .

(Italics ours.) This statutory section is general in nature and as such it supersedes or modifies provisions of a city charter to the extent they are in conflict. *Oakwood Co. v. Tacoma Mausoleum Ass'n*, 22 Wn.2d 692, 157 P.2d 595 (1945); *see* Const. art. 11, § 10.

On its face, the statute appears to allow cities the right to establish preferences in employment as they please. This, of course, must be done in light of *Eggert v. Seattle*, 81 Wn.2d 840, 505 P.2d 801 (1973), which held durational residential requirements unconstitutional. However, the statute qualified its seemingly pervasive grant of authority by specifically denying the power to discharge an employee merely because he resides outside the territorial boundaries of the

city. If, in fact, a city is prohibited from discharging an employee from service based on his residency alone, can that same city ground its layoff preference procedures on residency? This question can only be answered by ascertaining the intended purpose associated with the enactment of RCW 35.21.200.

In *Mosebar v. Moore*, 41 Wn.2d 216, 248 P.2d 385 (1952), the court was presented with the question of whether the City of Yakima could discharge a city employee merely because he moved his residency outside the city limits. The court, in holding that RCW 35.21.200 precluded the City's action, stated that for the first time a clear distinction was made between residence as a condition precedent to employment and as a requisite for continued employment. In the first instance, a city has the power to require residence within the city's limits. However, residence can no longer be utilized as a factor for continued employment. This clear distinction is buttressed by the court's belief that the purpose of the statute was "to protect civil service employees, as a class, from the operation of any city charter or ordinance requiring continued residence, as a requisite of continued employment." *Mosebar v. Moore, supra* at 220.

█ The import of the *Mosebar* decision is clear. The intended purpose of the statute was to protect civil service employees from city charter provisions demanding residence within the city's boundaries as a requisite to continued employment by the city. Accordingly, it follows that the city may not base its removal of an employee—however characterized—on whether or not he resides within the municipality's boundaries. In so deciding, we are cognizant of appellants' argument that the statute merely prevents the City from "discharging" an employee on account of his nonresidency; it says nothing about a "layoff." Although appellants refer to several cases wherein the semantic difference between "discharge" and "layoff" is pointed out, *see, e.g., Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 90 L. Ed. 1230, 66 S. Ct. 1105, 167 A.L.R. 110 (1946); *Conner v. Phoenix Steel Corp.*, 249 A.2d 866 (Del.

1969); *White v. Crane Co.*, 147 So. 2d 32 (La. App. 1962), we are guided by language in *State ex rel. Ausburn v. Seattle*, 190 Wash. 222, 241, 67 P.2d 913, 111 A.L.R. 418 (1937), wherein the court said,

> If a man is "laid off," he is suspended. *It differs from removal from service only in degree.* A removal implies permanent separation from the service, while a suspension or lay-off implies a temporary separation from the service.

(Italics ours.) In light of present day realities, an employee laid off from his job may have no chance to regain employment with his former employer. This may be especially true of municipal workers employed by city governments faced with ever increasing financial problems. Moreover, to approve appellants' inflexible distinction between "discharge" and "layoff" would allow a city to circumvent the proscription of RCW 35.21.200 by merely characterizing any termination of employment as something other than a discharge.

The language utilized in the Seattle City Charter also provides support for the conclusion we reach today. Article 16, section 8 of the Seattle City Charter provides in relevant part that

> as among persons qualified by examination under the provisions of this article, persons who have been residents within the city for at least one year immediately preceding appointment and regular civil service employees who are required to reside outside the city in connection with their employment, shall be placed at the head of the list of eligibles in the order of their standing upon examination and shall be accorded preference in *original appointment.*

(Italics ours.) The reference to "original appointment" is a rather definitive statement that any preference based on residence would be applicable at the time of hiring only. This reading of the charter provision is in accord with recent United States Supreme Court decisions stating that bona fide residence requirements for employment are valid. *See McCarthy v. Philadelphia Civil Serv. Comm'n*, ............ U.S. ............, 47 L. Ed. 2d 366, 96 S. Ct. 1154 (1976); *Dunn v.*

*Blumstein,* 405 U.S. 330, 342 n.13, 31 L. Ed. 2d 274, 92 S. Ct. 995 (1972); *Shapiro v. Thompson,* 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (1969). In deciding that the charter provision granting preference in employment applies to appointment only, we are aware that previous Washington Supreme Court cases have construed the meaning of the phrase "preference in employment" to be applicable not only at the inception of the employment but also in the continuation or retention of such employment. *State ex rel. Ford v. King County,* 47 Wn.2d 911, 290 P.2d 465 (1955); *State ex rel. Beebe v. Seattle,* 148 Wash. 565, 269 P. 850 (1928). However, the context in which these cases arose is not altogether similar to the instant case. The *Beebe* court was concerned with a veterans' preference clause contained in the then article 16, section 6 of the Seattle City Charter. The court determined that the preference applied both at the time of hiring and at the time of discharge or layoff. Subsequent to the *Beebe* case, the charter was amended by removing any reference to veterans in section 6 and making section 8 the prime preference section. As we noted previously, section 8 merely provides a preference in employment in the appointment of civil service employees. The *Ford* case was concerned with the state veterans' preference statute, RCW 73.16.010, and not RCW 35.21.200. Consequently, both *Beebe* and *Ford* are distinguishable.

We now turn to respondents' cross-appeal in which they challenge the trial court's determination that in all other respects the residency requirements as stated in the city charter and in the civil service rules are valid and in full force. Specifically, respondents contend that the City should be prohibited from granting a residence preference in promotional examinations. This court is unable to find and respondents did not refer us to any charter provision or civil service rule wherein the City utilizes a preference system for promotion based on residence. In fact, article 16, section 10 says nothing about residence in outlining the procedures for promotion:

The commission shall by its rules provide, that when-

ever it is practicable in the judgment of the commission, positions in the higher classes shall be filled by promotion on the basis of service credit and standing upon competitive examination. The examination shall be such as to determine the qualifications of the applicants to perform the duties of the class positions. When it is not practicable for the position to be filled by promotional examination, the examination for the position shall be open and competitive, provided that preference in eligibility for appointment shall be given to each city employee who has had at least one year of regular service in a lower class of related work as defined in the class specification of duties by adding five per cent of his earned examination grade to such grade; and provided, further, that if the vacancy to be filled from the examination is within the department in which he is employed, an additional such credit of five per cent of his earned examination grade, shall be added to his earned grade.

Furthermore, the trial court's ruling in no way allows the Civil Service Commission to enact a preference program with regard to promotions if, in fact, such a program would contravene the city charter. The trial court's ruling merely states that residence preferences already provided for in the charter and in the rules established by the Civil Service Commission are valid. We see no merit to respondents' cross-appeal.

Affirmed.

WILLIAMS, C.J., and REVELLE, J. Pro Tem., concur.

Rehearing by Court of Appeals pending February 10, 1977.