[No. 26796-9-II. Division Two. July 2, 2002.]

HENRY GOSSAGE, *Appellant*, v. THE STATE OF WASHINGTON, *Respondent*.

---

*Paul D. Doumit* (of *Doumit & Doumit, P.C.*), for appellant.
*Kelley J. Sweeney* and *Christine O. Gregoire, Attorney General*, and *Michael P. Lynch, Assistant*, for respondent.

QUINN-BRINTNALL, A.C.J. — When Henry Gossage, a former state employee, was not hired for various state jobs, he sued claiming the State discriminated against him due to his disability, race, and former convict status. He also alleged that the State did not follow the veterans' preference act requiring preference for veterans in state hiring. The trial court dismissed all these claims. Gossage appeals. Holding that the veterans' preference for which Gossage qualified is not absolute and that Gossage failed to present a prima facie case of discrimination, we affirm.

## FACTS

Gossage worked for the State off and on from 1979 to 1992 in various jobs.[1] He resigned in 1992 to serve a prison sentence at Twin Rivers Correctional Center in Monroe.[2]

---

[1] Park aide for the Parks and Recreation Commission June 5 to September 7, 1979; chemist for the Liquor Control Board May 25, 1988 to February 1989; chemist with Department of Labor & Industries (L&I) March 1, 1989 until January 23, 1990, when he became an industrial hygienist with L&I.

[2] The State did not note Gossage's criminal history as a reason for not rehiring him. *See Gugin v. Sonico, Inc.*, 68 Wn. App. 826, 846 P.2d 571 (1993) (striking State Human Rights Commission regulation that made persons who had been convicted of a crime a protected class as beyond agency's statutory authority).

After his release, Gossage began reapplying for state employment. In his complaint he alleges that he was unlawfully denied a job with the State due to racial and disability discrimination.

STATE HIRING PROCESS

State agency jobs are filled from ranked registers. To get on a register, a candidate first applies for a position. The Department of Personnel (DOP) then screens the applicants, and those who meet the minimum standards are tested. The tests vary among written, oral, essay, performance, and "experience and training." Clerk's Papers at 53. The names of applicants who pass these tests are placed on the appropriate register. The registering process is normally handled by computer; names on the same register are ranked according to score. When an agency has a vacancy, it requests certification, which means the DOP certifies to the agency a list of names from the ranked registers, usually six candidates for each vacancy. An agency may hire any person referred from the DOP register list.

In the hiring processes at issue, a panel interviewed the candidates certified by DOP. The interview questions were job specific and designed to reveal the candidate's qualifications for the job.

At the time of Gossage's interviews, the State had stated affirmative action goals.[3] Persons in a protected group for affirmative action purposes were referred to as "plus 3" candidates. Gossage qualified as a plus-3 candidate because he is Japanese-American and disabled by psoriasis.

PROCEDURAL HISTORY

After the parties exchanged discovery, the State moved for summary judgment. Gossage then moved for partial summary judgment, claiming that he had been denied his

---

[3] Initiative Measure No. 200, approved by Washington voters on November 3, 1998, and codified as RCW 49.60.400 by Laws of 1999, ch. 3, § 1, provides that the State "shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting." RCW 49.60.400(1).

veteran's preference. The court found it undisputed that Gossage was a veteran as defined by RCW 73.16.010. But the court ruled that because Gossage applied for a competitive job, RCW 41.04.010, not RCW 73.16.010, governed the preference available to him:

> Applying the ruling in [*State ex. rel. Ford v. King County*, 47 Wn.2d 911, 290 P.2d 465 (1955)], by analogy, the Legislature has by law created a preference for veterans applying for employment positions that require competitive examinations. This Court thus cannot rule as a matter of law that Plaintiff is entitled to a preference under RCW 73.16.010 for such employment positions because of his status as a veteran.

Clerk's Papers at 321.

Gossage moved for reconsideration. He then moved to amend his complaint to request a writ of mandamus (to order the State to hire him) and to update the time period encompassing the alleged discrimination. The trial court granted Gossage's motion, allowing him to allege the mandamus cause of action, and reserved its ruling on the motion to allege claims after March 25, 1998, "pending final resolution of this action." Clerk's Papers at 340. In this same order, dated December 15, 2000, the court denied Gossage's motion for reconsideration, reaffirming the ruling explained in its memorandum decision on the parties' cross motions for summary judgment. Gossage appealed and then filed a motion on the merits, which we denied.

We address two basic issues. First, did the State properly refuse to apply the veteran's preference in RCW 73.16.010? Second, did Gossage establish a prima facie case of discrimination?

## ANALYSIS

This court engages in the same inquiry as the trial court when reviewing an order for summary judgment: Review is

de novo. *Enter. Leasing, Inc. v. City of Tacoma*, 139 Wn.2d 546, 551, 988 P.2d 961 (1999); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). This court will affirm summary judgment if no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. CR 56(c); *Marquis v. City of Spokane*, 130 Wn.2d 97, 105, 922 P.2d 43 (1996). We consider all facts and reasonable inferences in the light most favorable to the nonmoving party. *Marquis*, 130 Wn.2d at 105. If the court determines there is a dispute as to any material fact, summary judgment is improper; however, where reasonable minds could reach but one conclusion from the admissible facts in evidence, summary judgment is appropriate. *Marquis*, 130 Wn.2d at 105.

VETERANS' PREFERENCE

Gossage claims that the trial court denied him the benefit of his veterans' preference when it ruled that chapter 41.04 RCW impliedly repealed or amended chapter 73.16 RCW, and that neither the plain language of the statutes nor the standard rules of statutory construction warrant such a construction.

RCW 73.16.010 gives preference for hiring veterans of wars and military campaigns for State employment:

> In every public department, and upon all public works of the state, and of any county thereof, honorably discharged soldiers, sailors, and marines who are veterans of any war of the United States, or of any military campaign for which a campaign ribbon shall have been awarded, and their widows or widowers, shall be preferred for appointment and employment.

The chapter does not define what being "preferred for appointment and employment" entails.

Former RCW 41.04.010 (1974) also creates a preference for the employment of veterans by providing a scoring advantage to veterans on State examinations and increas-

ing their competitive examination scores according to the type and duration of their military service:

In all competitive examinations . . . to determine the qualifications of applicants for public offices, positions or employment, the state . . . shall give a preference status to all veterans as defined in RCW 41.04.005,[4] by adding to the passing mark, grade or rating only, based upon a possible rating of one hundred points as perfect a percentage in accordance with the following:

(1) Ten percent to a veteran who is not receiving any veterans retirement payments and said percentage shall be utilized in said veteran's competitive examination and not in any promotional examination until one of such examinations results in said veteran's first appointment: PROVIDED, That said percentage shall not be utilized in any promotional examination;

(2) Five percent to a veteran who is receiving any veterans retirement payments and said percentage shall be utilized in said veteran's competitive examination only and not in any promotional examination until one of such examinations results in said veteran's first appointment: PROVIDED, That

---

4

(1) As used in RCW 41.04.005 . . . "veteran" includes every person, who at the time he or she seeks the benefits of RCW . . . 41.04.010 . . . has received an honorable discharge or received a discharge for physical reasons with an honorable record and who meets at least one of the following criteria:

. . . .

(b) The person has received the armed forces expeditionary medal, or marine corps and navy expeditionary medal, for opposed action on foreign soil, for service:

(i) In any branch of the armed forces of the United States; or

(ii) As a member of the women's air forces service pilots.

(2) A "period of war" includes:

(a) World War I;

(b) World War II;

(c) The Korean conflict;

(d) The Vietnam era, which was the period beginning August 5, 1964, and ending on May 7, 1975; . . . .

Former RCW 41.04.005 (1996).

said percentage shall not be utilized in any promotional examination;

. . . .

(4) There shall be no examination preferences other than those which have been specifically provided for above and all preferences . . . *must be claimed by a veteran within eight years of the date of his release from active service.*

Former RCW 41.04.010 (1974)[5] (emphasis added).

It is undisputed that Gossage qualifies for preference as a veteran under RCW 73.16.010, which provides in pertinent part that honorably discharged service men and women who are veterans of any war of the United States, or of any military campaign for which a campaign ribbon was awarded "shall be preferred for appointment and employment." Gossage's discharge papers show that he was honorably discharged and received both the National Defense Service Medal and the Armed Forces Expeditionary Medal for his service in Vietnam and Korea. Additionally, the trial court found it undisputed that Gossage "qualifies as a veteran within the meaning of RCW 73.16.010" (Clerk's Papers at 319), and the State does not challenge this ruling on appeal.

The issue here concerns the application of the general veterans' preference statute (RCW 73.16.010) in relation to the more specific preferential point advantage awarded veterans on competitive tests for jobs under RCW 41.04.010. Gossage claims that the point advantage statute does not affect the general preference statutes. And he argues for an interpretation that results in the general preference statute providing an absolute preference if the veteran passes the appropriate exam.

---

[5] RCW 41.04.010 was amended in 2000 and 2002. Among other changes, the statute now applies for 15 years after the veteran's release from active military service and may be extended for various reasons. *See* Laws of 2002, ch. 292, § 4. The changes notwithstanding, we cite to the current statute unless otherwise noted because our analysis applies to both versions of the statute.

STATUTORY CONSTRUCTION ARGUMENTS

The State argues that RCW 73.16.010 governs general employment with a state or county agency, providing an "abstract preference" in employment. It claims that RCW 41.04.010 satisfies this abstract preference in the specific situations where a competitive exam is required. Gossage argues that RCW 73.16.010 defines who is entitled to the veterans' preference and that definition "is different than and not encompassed in" the definition of "veteran" as defined under RCW 41.04.005. Br. of Appellant at 8. Additionally, he notes, RCW 73.16.010 provides no expiration date for the preference, while RCW 41.04.010 provides the point preference for only eight years. Former RCW 41.04.010(4) (1974).

The trial court ruled that RCW 41.04.010 defines the nature of and limits of the preference set forth in RCW 73.16.010 for all veterans in the context of employment determined by competitive exams.

 It is a basic rule of statutory construction that when there is a conflict between a statutory provision that treats a subject in a general way and another that treats the same subject in a specific way, the specific statute will prevail. *Pannell v. Thompson*, 91 Wn.2d 591, 597, 589 P.2d 1235 (1979). But we construe related statutes harmoniously to bring about a unified statutory scheme that maintains the integrity of the respective statutes whenever possible. *Schumacher v. Williams*, 107 Wn. App. 793, 801 n.15, 28 P.3d 792 (2001) (citing *State v. Chapman*, 140 Wn.2d 436, 448, 998 P.2d 282, *cert. denied*, 531 U.S. 984 (2000)), *review denied*, 145 Wn.2d 1025 (2002). Furthermore, we will not assume that the legislature intended to effect a significant change in the law by implication. *Schumacher*, 107 Wn. App. at 801 (citing *State v. Strauss*, 119 Wn.2d 401, 418, 832 P.2d 78 (1992)).

 The trial court ruled that the more specific RCW 41.04.010 satisfied the more general preference provided

for in RCW 73.16.010 in the limited situation where competitive exams are given. Gossage claims that the trial court erred in ruling that RCW 41.04.010 modifies RCW 73.16.010 by implication because (1) RCW 73.16.015[6] establishes an independent cause of action to enforce veterans' rights under chapter 73.16 RCW; (2) the statutes in chapter 41.04 RCW involve a detailed administrative procedure that is "expressly limited in scope on their faces" and does not mention an intent to modify the chapter 73.16 RCW veterans' preferences in public employment; and (3) the trial court distinguished *State ex rel. Ford v. King County*, 47 Wn.2d 911, 290 P.2d 465 (1955), in error.

The State argues that the code reviser's notes to RCW 73.16.010 cross-reference RCW 41.04.010, and that an attorney general opinion from 1974 (1974 Op. Att'y Gen. No. 22) supports its interpretation that RCW 41.04.010 satisfies RCW 73.16.010 in the competitive exam situation.

This court construes the statutes so as to give meaning to both. Thus, in the context of competitive examinations, the more specific of the two (RCW 41.04.010) clarifies the more general (RCW 73.16.010) by providing an increase in points for veterans in the competitive exam context.

EXPIRATION OF RCW 41.04.010 COMPETITIVE EXAMINATION PREFERENCE

A larger question is presented when a veteran like Gossage qualifies for the general preference under RCW 73.16.010 but does *not* qualify for the preference under RCW 41.04.010 (because it has been over 8 years (now 15) since he was released from active service). The State asserts that RCW 41.04.010 controls, meaning that Gossage is not entitled to further preference. Gossage asserts that his preference under RCW 73.16.010 continues and that this statute mandates his employment over all

---

[6] RCW 73.16.015 permits veterans entitled to the benefits of RCW 73.16.010 to enforce their rights by civil action in the courts.

nonveterans once he qualifies for the list. We find neither argument persuasive.

Gossage correctly points out that the preference conferred in RCW 73.16.010 does not expire and is not by its terms expressly limited to noncompetitive employment. Thus, while Gossage is not entitled to an increase in points on the competitive examination, he is entitled to "be preferred for appointment and employment." But Gossage also asserts that the nature of this preference is automatic and, once he passes the examination, absolutely entitles him to the position he seeks. This argument incorrectly presumes that the interview process is not part of the examination of an applicant's qualifications for the position, and it renders the interview process a nullity, except when more than one war veteran seeks the same job. Moreover, the preference is not unlimited and requires that the applying veteran "possess the capacity necessary to discharge the duties of the position involved" (RCW 73.16.010), qualifications the interview process is designed to evaluate.

WASHINGTON CASE LAW

Of the 10 Washington cases addressing RCW 73.16.010, only 3 of these might be helpful in analyzing the current issues. The first, *Ford*, 47 Wn.2d 911, was applied by the trial court here:

> Applying the ruling in [*Ford*, 47 Wn.2d 911], by analogy, the Legislature has by law created a preference for veterans applying for employment positions that require competitive examinations. This Court thus cannot rule as a matter of law that Plaintiff is entitled to a preference under RCW 73.16.010 for such employment positions because of his status as a veteran.

Clerk's Papers at 321.

In *Ford*, ex-servicemen providing fire protection and security service at the airport sought a writ of mandamus against King County after they were fired (due to economic

reasons only), while nonveterans who had worked in the department longer were kept on. 47 Wn.2d at 912-13. King County did not operate under the civil service system; therefore, no other preferences (such as seniority) applied. *Ford*, 47 Wn.2d at 914. The *Ford* court held (1) that the veterans' preference applied equally to obtaining and retaining employment and (2) that the veterans were entitled to continued employment in preference to the nonveterans, even though the latter had worked for the county longer. *Ford*, 47 Wn.2d at 915.

Here, when the trial court applied *Ford*, it reasoned that the general veterans' preference statute was the only criterion considered in *Ford*, whereas in Gossage's case, the more specific RCW 41.04.010 added another consideration.

Gossage argues that *Ford* establishes that " 'preferred for appointment and employment' is given its plain meaning—a veteran protected under this statute *shall be selected* over another qualified candidate." Br. of Appellant at 10. But in *Ford* there was no question about the veterans' qualifications: They already had the job and were terminated due to economic reasons only. 47 Wn.2d at 912-13. *Ford* does hold that veterans must be hired over more qualified candidates once they "qualify" for a position. The court did not discuss the relative qualifications of the veteran and nonveteran firefighters in *Ford*. At most, the case holds that when no other considerations provide entitlement to employment with the State, and all things otherwise being equal, veterans should be fired last.[7] The trial court properly distinguished *Ford* from the situation here.

The second Washington case to analyze a veterans' preference does not address RCW 73.16.010, but rather a City of Seattle charter amendment that was *similar* to RCW 73.16.010:

> Preference in employment shall at all times, subject to such examination, be given to citizens of the United States and

---

[7] This is not to say that *Ford* requires that all things *must* otherwise be equal: The court simply did not have to reach that issue.

electors of the city, and to honorably discharged soldiers, sailors and marines of the United States who have served in time of war.

*State ex. rel. Raines v. City of Seattle*, 134 Wash. 360, 363, 235 P. 968 (1925). Unlike the State statute here, Seattle's charter amendment also more specifically addressed competitive examinations and stated

> as among persons qualified by examination under the provisions of this article, honorably discharged soldiers, sailors and marines of the United States who have served in time of war *shall be placed at the head of the list of eligibles upon such register in the order of their excellence among themselves*, as determined by said examination, and accorded preference of appointment, over the other eligibles thereon, to the respective positions for which they have qualified . . . .

*Raines*, 134 Wash. at 364 (emphasis added). The italicized language above specifically provides that veterans go to the head of the list of eligibles—RCW 73.16.010 has no such language. Additionally, because the *Raines* opinion does not mention an interview process, the examination could have been the sole determiner of a candidate's qualifications. Since *Raines* interpreted the language of a charter amendment, which differed from the State statute, its analysis is also not on point.

■ Of greater assistance is this court's recent opinion in *Mitchell v. Board of Industrial Insurance Appeals*, 109 Wn. App. 88, 34 P.3d 267 (2001). Mitchell argued that RCW 73.16.010 created an absolute preference mandating the hiring of veterans. Division One of this Court reviewed both *Ford* and *Raines* and held that "an appointing body must have the discretion to determine in its own way whether the veteran is actually qualified to hold the job. . . . [W]e cannot say that an employer is always obliged to appoint a veteran who meets only the minimum requirements stated in a job description." *Mitchell*, 109 Wn. App. at 92. In *Mitchell*, as here, the competitive positions called for skills that are not necessarily learned by serving in the military. In the hiring process, all applicants were screened, and the top plus-3

candidates were interviewed. Plainly, the State designed the selection process to evaluate candidates on more than their ability to meet the minimum requirements. An employer must be free to set the hiring requirements of a job as they reasonably relate to the duties to be performed to ensure that the person hired will be competent. *Mitchell*, 109 Wn. App. at 92-93 (citing *Brickhouse v. Spring-Ford Area Sch. Dist.*, 540 Pa. 176, 656 A.2d 483 (1995)). We agree with *Mitchell* that "[a] legislative classification favoring veterans is reasonable, and does not violate the Privileges and Immunities Clause, only if its enforcement is limited to situations where the veteran possesses qualifications substantially equal to those of non-veteran applicants" as revealed by a full and fair examination and interview process. *Mitchell*, 109 Wn. App. at 93.

PERSUASIVE AUTHORITY

Gossage also discusses other states' various veterans' preference statutes to advance his argument that once he "qualifies," he must be hired before nonveterans.[8] These cases are of limited value, as only one, the former Montana statute, discusses language similar to the Washington statute.[9] The Montana veterans' preference statute was the most similar to Washington's and was equally vague, pro-

---

[8] In a case analyzing the constitutionality of the Massachusetts veterans' preference statute, the United States Supreme Court noted the two Washington statutes at issue here and characterized them as providing an absolute preference for veterans:

> The forms of veterans' hiring preferences vary widely. The Federal Government and approximately 41 States grant veterans a point advantage on civil service examinations, usually 10 points for a disabled veteran and 5 for one who is not disabled. A few offer only tie-breaking preferences. *A very few States*, like Massachusetts, *extend absolute hiring or positional preferences to qualified veterans*. See, e. g., [RCW] §§ 41.04.010, 73.16.010 (1976).

*Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 261 n.7, 99 S. Ct. 2282, 60 L. Ed. 2d 870 (1979) (emphasis added) (citations omitted).

[9] *See, e.g., Koelfgen v. Jackson*, 355 F. Supp. 243 (D. Minn. 1972) (analyzing constitutionality of statute granting an absolute preference to veterans when they are initially appointed to a civil service job, provided they score a passing mark on the civil service examination), *aff'd*, 410 U.S. 976 (1973); *Denton v. Civil Serv. Comm'n*, 277 Ill. App. 3d 770, 661 N.E.2d 520, 522, 214 Ill. Dec. 666 (1996) (analyzing administrative code that specifically references category ratings "if category ratings are used, the veteran eligibles . . . shall be preferred."), *aff'd*, 679 N.E.2d 1234 (Ill. 1997); *Ballou v. Dep't of Civil Serv.*, 75 N.J. 365, 382 A.2d 1118,

viding, "the following shall be preferred for appointment and employment: veterans." *See Crabtree v. Mont. State Library*, 204 Mont. 398, 665 P.2d 231, 232 (1983) (analyzing former veterans' preference statute as applied to disabled plaintiff, also preferred under statute). The Montana court held that the statute provided an absolute preference for veterans who met minimum qualifications for state employment. *Crabtree*, 665 P.2d at 234.[10] Again, we agree with *Mitchell*. *Crabtree* is inconsistent with *Raines* and is, therefore, unpersuasive. *Mitchell*, 109 Wn. App. at 93.

■■ The most compelling argument against Gossage's interpretation that RCW 73.16.010 gives veterans an absolute preference is that the interpretation would render RCW 41.04.010 largely superfluous. If possible, a statute must be given meaningful effect, not an interpretation that would render it superfluous. *City of Bellevue v. E. Bellevue Cmty. Council*, 138 Wn.2d 937, 946, 983 P.2d 602 (1999). If veterans have an absolute preference under RCW 73.16.010, the increase in their score under RCW 41.04.010 would be unnecessary and meaningless.[11]

The trial court's ruling that RCW 41.04.010 applies instead of RCW 73.16.010 in competitive exam situations essentially removes *any* preference for those veterans who do not qualify for the RCW 41.04.010 preference under that statute's terms. To that extent, the trial court erred. Such veterans are not entitled to an increased score under RCW

---

1119 (1978) (analyzing statute that made veteran's appointment automatic under statute based on fact was veteran and had placed among the top three candidates certified for the position); *Hous. Auth. v. Pa. State Civil Serv. Comm'n*, 556 Pa. 621, 730 A.2d 935, 942 (1999) (analyzing statute more similar to former RCW 41.04.010 than the general veterans' preference statute, increasing exam points for veterans and specifically requiring "mandatory appointment preference").

[10] As the State points out, the statute was quickly amended to remove the absolute preference after *Crabtree* was issued. *See Olson v. Dep't of Revenue*, 235 Mont. 31, 765 P.2d 171, 172-73 (1988).

[11] We note that Gossage's interpretation would not render chapter 41.04 RCW superfluous in those situations where a veteran becomes "qualified" (as he defines it, passes the examination) due only to the increase in his or her score by operation of chapter 41.04 RCW.

41.04.010 but remain entitled to preference under RCW 73.16.010.

Contrary to Gossage's claim, however, this preference operates as a tie breaker among equally qualified candidates, not an absolute preference for veterans once they pass the examination. *See Mitchell*, 109 Wn. App. at 93 (limiting enforcement of preference to situations where the veteran possesses qualifications "substantially equal" to those of nonveteran applicants). To interpret these statutes otherwise would render RCW 41.04.010 and the structured interview process meaningless.

■ To give effect to both RCW 73.16.010 and RCW 41.04.010, as we must, we hold that in competitive examinations, veterans who are not entitled to preference under RCW 41.04.010 but who are entitled to preference under RCW 73.16.010 shall be afforded the full benefit of the latter privilege: Where two or more candidates for employment have equal qualifications, including performance on examinations, interviews, and other testing, preference must be given the veteran.

The record before us establishes that taking the entire hiring process into account, Gossage was not equally qualified to those applicants ultimately chosen for the position. The fact that he would have been entitled to a veterans' preference to break a nonexistent tie does not change the outcome of this case.

Thus, we affirm.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MORGAN and BRIDGEWATER, JJ., concur.

Review denied at 148 Wn.2d 1012 (2003).