[No. 32054.    Department One.    September 25, 1952.]

PAUL MOSEBAR, *Respondent*, v. W. K. MOORE, *as Chief of the Yakima Fire Department, Appellant.*[1]

[1]Reported in 248 P. (2d) 385.

G. E. Clark, for appellant.

Olson & Palmer and John Wm. McArdle, for respondent.

WEAVER, J.—Under present civil service statutes, rules and regulations, city charter, and ordinances of the city of Yakima, may a member of the city fire department be discharged for having moved his residence outside the corporate limits of the city?

October 18, 1949, respondent met all civil service requirements, including that of residence, and was employed as a fireman by the city of Yakima. On May 28, 1951, he moved his residence beyond the city limits. The chief of the fire department notified him that by reason of this, his employment would be terminated June 11, 1951. Upon appeal, the Yakima civil service commission revoked the order of discharge and suspended respondent for ninety days without pay. They further specified that should he resume his residence in the city during the period of suspension, or should the court hold that he was not required to reside within the city in order to retain his employment, respondent would be restored to duty; otherwise, he would be discharged.

Upon appeal, the superior court ruled that respondent's discharge was unlawful and restored him to his status as a civil service employee of the Yakima fire department.

Article 2, § 4, of the charter of the city of Yakima provides:

"Persons hereafter *employed* by the city shall be residents of the city except those whose duties require them to live outside of the city." (Italics ours.)

In 1935, the legislature passed the firemen's civil service act. Laws of 1935, chapter 31, § 7, p. 82; (Rem. Rev. Stat. (Sup.) § 9558-7; *cf.* RCW 41.08.070) providing, in part:

"An *applicant* for a position of any kind under civil service . . . must have been a resident of said city for at least one (1) year." (Italics ours.)

September 3, 1935, the city commission passed ordinance No. B-108, establishing a system of civil service for all employees of its fire department and adopting, by reference, all provisions of chapter 31, Laws of 1935.

Rule 2, § 1, of the general rules and regulations of the civil service commission of Yakima (this case is governed by rules adopted July 28, 1948) adopted pursuant to the ordinance and statutes, provides:

"An *applicant* for any position under The Civil Service, must be a citizen of the United States . . . and every employee . . . must be a resident of the City of Yakima." (Italics ours.)

The crux of civil service is tenure of position. It is helpful in reaching our conclusion in this case to note that both chapter 31, Laws of 1935, and the rules and regulations of the civil service commission are quite detailed in setting forth the grounds upon which the commission has power to terminate employment. They are almost identical in wording. Neither statute nor rules provide that removal of residence from the corporate limits is a ground for the discharge of an employee.

In summary: The city charter requires residence for "persons hereafter employed;" the 1935 statute requires residence of one year for "an applicant;" the civil service rules (authorized by ordinance) require that "every employee under civil service must be a resident." It well may be argued that the city charter and the 1935 statute require

residence only as a prerequisite for eligibility, and not as a continuing requirement for continued employment. If such were the case, then the requirement of the rules of the civil service commission that "every employee under civil service must be a resident of the city of Yakima" would appear to go further than authorized by either the city charter or the 1935 statute.

Authority to resolve this apparent conflict or ambiguity was contained in § 1, chapter 25, Laws of 1941, p. 59, Rem. Supp. 1941, § 9213-3, which reads:

"Any city or town may by ordinance of its legislative authority determine whether there shall be any residential qualifications for any or all of its appointive officials *or employees, and in event such legislative authority does not fix any residential qualifications for any of such officials or employees, there shall be none*: Provided, This act shall not authorize a city or town to change any residential qualifications prescribed in any city charter for any appointive official or employee." (Italics ours.)

It has been stipulated by the parties in this case that the city of Yakima has adopted no ordinance other than No. B-108 relating to residential requirements of members of its fire department.

Chapter 162, p. 446, Laws of 1951 (RCW 35.21.200) amended the 1941 act. It became effective June 6, 1951, prior to the effective date of respondent's discharge. It substituted for the italicized language above quoted, the following:

". . . for preference in employment of its employees, *but residence of an employee outside the limits of such city or town shall not be grounds for discharge of any regularly appointed civil service employee otherwise qualified.*" (Italics ours.)

The proviso remained the same. Two new provisos were added by the 1951 act but they are not material to this case.

For the first time a clear distinction is made between residence as a condition precedent to employment and as a requisite for continued employment. For the first time, by

statute, nonresidence became a prohibited ground for discharge of a civil service employee.

■■ The 1951 act is unambiguous. We think it is clear in its intent to protect civil service employees, as a class, from the operation of any city charter or ordinance requiring continued residence, as a requisite of continued employment. It authorizes a city to enact residence qualifications by any ordinance which does not conflict with its charter; but it forbids the city to discharge a civil service employee, otherwise qualified, upon the sole ground that he has moved beyond the corporate limits.

The statute is a general statute. It applies to all persons within a given class, namely, employees having the status of civil servants in every city and town in the state. *Libby, McNeill & Libby v. Ivarson,* 19 Wn. (2d) 723, 144 P. (2d) 258. A general statute enacted by the legislature supersedes or modifies provisions of a city charter to the extent that they are in conflict. *The Oakwood Co. v. Tacoma Mausoleum Ass'n,* 22 Wn. (2d) 692, 157 P. (2d) 595, 161 P. (2d) 193; see Washington constitution—Art. XI, § 10.

Appellant in his brief, argues:

"If the trial court is correct in its interpretation of the 1951 Session Law above cited, an applicant for employment on the City Fire Department could qualify by being a resident of the City of Yakima; and, the day after his appointment, could move outside of the city, and still retain his position. If the employee could move one block beyond the city limits, . . . he could move 10 miles beyond the city limits. If one employee can move, all employees could move. Such a condition would seriously impair the efficiency of the city government; especially that of the emergency services, such as the Fire Department and the Police Department."

■ This is a cogent argument, but, unfortunately, it is addressed to the wrong forum. As the trial judge said in his memorandum opinion:

"Practical considerations of safety and efficiency within the department might dictate that all employees thereof should continue to maintain their residences within the city limits. Courts, however, may not concern themselves with

the wisdom of a legislative enactment when the terms of that enactment are clear and unequivocal. In such a case the will of the legislature as expressed in the statute must be given effect. If the situation as stated in the 1951 enactment here under consideration, is one fraught with danger to the welfare of the city and its inhabitants, relief therefrom must be sought from the legislature and not from the courts."

■ Hence, we hold that under the statute (RCW 35.21-.200), respondent, who was a civil servant otherwise qualified, could not be discharged for having moved his residence beyond the corporate limits of Yakima.

Appellant contends that, if the 1951 act is given this construction, it violates Art. XI, § 10 of the state constitution, because it constitutes an improper attempt on the part of the legislature to interfere in the local affairs of a municipality acting under its municipal charter.

■ It is true that such charters

". . . become the organic law thereof, and supersede any existing charter including amendments thereto, and all *special* laws inconsistent with such charter." Washington constitution—Art. XI, § 10. (Italics ours.)

This constitutional provision, while providing for home rule within a city or town as to those matters which are local in character, does not give to the municipality, under its charter, the right to legislate exclusively on all matters which touch its existence. By authorizing municipal charters, the constitution does not take from the legislature the right to determine what shall be the law of the state, both inside and outside of municipalities.

It is equally true that

". . . cities or towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this Constitution shall be subject to, and controlled by *general laws*." Washington constitution—Art. XI, § 10. (Italics ours.)

The law here in question (RCW 35.21.200), as we have pointed out, is a general law and applies equally to all persons within a given class. It affects not only the civil ser-

vice employees of Yakima but also the civil service employees of every other city or municipal corporation within the state. It follows then that Art. XI, § 10 of the constitution, is not violated by the statute, for city charters are specifically made subject to and controlled by such general laws.

*State ex rel. State Tax Commission v. Redd,* 166 Wash. 132, 6 P. (2d) 619, and *Young v. Seattle,* 30 Wn. (2d) 357, 191 P. (2d) 273, 3 A. L. R. (2d) 704, cited by appellant, do not apply to the question under consideration.

Appellant finally contends that the statute (RCW 35.21-.200), making civil service employees immune from discharge because of residence outside the municipal limits, violates § 1 of amendment XIV of the Federal constitution guaranteeing equal protection of the laws and violates Art. I, § 12, of the Washington constitution, because it accords special privileges and immunities to civil service employees denied to other employees of a municipality.

■ In *State ex rel. Bacich v. Huse,* 187 Wash. 75, 80, 59 P. (2d) 1101, we said:

"The aim and purpose of the special privileges and immunities provision of Art. I, § 12, of the state constitution and of the equal protection clause of the fourteenth amendment of the Federal constitution is to secure equality of treatment of all persons, without undue favor on the one hand or hostile discrimination on the other.

"To comply with these constitutional provisions, legislation involving classifications must meet and satisfy two requirements: (1) The legislation must apply alike to all persons within the designated class; and (2) reasonable ground must exist for making a distinction between those who fall within the class and those who do not.

"Within the limits of these restrictive rules, the legislature has a wide measure of discretion, and its determination, when expressed in statutory enactment, cannot be successfully attacked unless it is manifestly arbitrary, unreasonable, inequitable, and unjust." (Citing cases.)

■■ It is obvious that the statute here in question meets the first test referred to in the foregoing quotation. It applies to all civil service employees. In order to hold the

statute unconstitutional, we would have to find that no reasonable ground exists for making a distinction between municipal employees in general and those municipal employees who are employed under the civil service statutes.

The civil service statutes and the rules and regulations which govern employment under them are replete with many distinctions between the position held by a civil servant and the position held by an appointive municipal employee. The most obvious, of course, is the fundamental purpose of the civil service statutes to place certain public positions beyond the pale of political influence, and to protect those who fill such positions, on the basis of merit, from arbitrary discharge. That portion of the 1951 act which is here attacked fits into the general purpose and scheme of the civil service system. Persons are not similarly situated if there is any reasonable difference in their relation to the purposes of the legislation. We cannot say that it establishes an unreasonable distinction between civil servants, as a class, and other municipal employees. The propriety of such a distinction is for the legislature, not the courts.

Appellant cites *Sherman Clay & Co. v. Brown,* 131 Wash. 679, 231 Pac. 166, *Kaufman v. West,* 133 Wash. 192, 233 Pac. 321, and *Cotten v. Wilson,* 27 Wn. (2d) 314, 178 P. (2d) 287, in support of its contention. In each of these cases the legislation under attack would have set up a class within a class without reasonable grounds for making the distinction. They are not applicable to this case.

The judgment is affirmed.

SCHWELLENBACH, C. J., MALLERY, GRADY, and DONWORTH, JJ., concur.