[No. 45133. En Banc. June 21, 1979.]

THE PORT OF SEATTLE, *Appellant,* v. WASHINGTON UTILITIES AND TRANSPORTATION COMMISSION, ET AL, *Respondents.*

790

*Bogle & Gates* and *Ronald T. Schaps,* for appellant.

*Slade Gorton, Attorney General,* and *John W. Hough, Assistant,* for respondent State.

*Sax & MacIver, Clyde H. MacIver, Daniel M. Caine,* and *James P. Donohue,* for respondent Western Tours.

WILLIAMS, J.—This is a declaratory judgment action brought by the Port of Seattle (Port) to resolve, among other issues, a conflict of jurisdiction between the Port and the Washington Utilities and Transportation Commission (WUTC). Also involved as a party to the dispute is Western Tours, Inc. (Western Tours). The Port is a municipal corporation organized under the port district laws of the State of Washington, RCW Title 53. The WUTC is an agency created by RCW Title 81. Western Tours is a corporation authorized to do business in this state; it owns and operates motor propelled busses transporting passengers for compensation.

At the center of the controversy is the question of whether the Port has the right to provide or regulate airporter service. The parties have agreed that "airporter service" means the transportation of airline passengers and crew, and their baggage, between Seattle–Tacoma International Airport (Sea–Tac) and points in the surrounding territory.

Western Tours provides airporter service between Seattle and Sea–Tac on a regularly scheduled basis along a regular route over the public highways. This airporter service is one

of several different methods of ground transportation to and from Sea–Tac, including other airport bus services, taxicabs, hotel limousine service, and private vehicles left at the airport parking garage. Once upon Port property at Sea–Tac, Western Tours is subject to regulations of the Port governing access by common carriers to the passenger terminal area at Sea–Tac for purposes of discharging and picking up passengers. However, pursuant to a special concession agreement with the Port, Western Tours also has the right to stand and wait at a designated parking area in front of the terminal area and the right to solicit passengers on Port property. In exchange for these rights, Western Tours pays the Port a fee based upon a percentage of airporter revenues. The contract regulates the rates, quality of services, and practices of Western Tours in transporting passengers between Seattle and Sea–Tac. The expiration date of this contract was July 1, 1977.

Western Tours holds a certificate from the WUTC to operate its airporter service. At the request of the Port, the commission included in the certificate issued to Western Tours several provisions which conditioned the effectiveness of the certificate on the existence of satisfactory access arrangements between the Port and Western Tours. The commission reserved the right to cancel the intrastate certificate without a hearing upon receipt of notice that the applicant had failed to obtain or continue in effect the necessary authorization from the Port to maintain adequate passenger service.

In 1975, the Port gave Western Tours its approval to an increase in its airporter service rates. Western Tours then filed these tariff provisions with the WUTC for informational purposes. The commission acted to suspend the fare increase pursuant to RCW 81.04.130 and noted the matter for hearing. The Port filed this action for declaratory judgment and injunctive relief challenging the commission's jurisdiction to regulate the airporter service. The commission agreed to a court stay of further action pending the

outcome of the proceeding. The Port, in turn, has refrained from issuing invitations for bids for a new long-term concession agreement for airporter service pending the resolution of this conflict.

Although this dispute was precipitated by the commission's suspension of a fare increase which Western Tours sought, Western Tours has taken the side of the commission in this dispute. Pursuant to RCW 81.68.040, the holder of a certificate issued by the commission is afforded a certain procedural advantage which enables it, upon a sufficient showing of certain facts, to block the issuance of a certificate for service for the same area to another carrier. Western Tours stands to lose this protection if the Port prevails in this jurisdictional dispute.

The case was tried upon an agreed statement of facts. The trial court held that the Port has the authority to control the use of its facilities at Sea-Tac and to contract by concession agreement for uses of those facilities. No party appeals from that portion of the trial court's conclusions. The Port appeals from the trial court's rulings that: airporter service to and from Sea-Tac is not in interstate commerce; the WUTC has exclusive control and jurisdiction over airporter services up to the airport boundaries; and the Port does not have the authority to provide airporter service to Sea-Tac directly, by contract or by charter, or to regulate the "rates, services or practices" of airporter services in their transportation of passengers and baggage outside airport boundaries. The Port also appeals the trial court's finding that Western Tours' airporter service has been adequate and satisfactory to the Port.

The first issue before this court is whether the Port has authority to provide airporter service, either directly or indirectly. As an alternative to entering into a new long-term concession agreement with a carrier for airporter service, the Port is considering the possibility of operating its own airporter service, either by purchase, lease, or charter of vehicles. The Port contends that any airporter service

which it provides itself would be immune from WUTC regulation. It is our opinion that the Port is authorized to provide airporter service only to the extent that it may enter into special long–term concession agreements for the provision of such service. We find no authority, however, to support the Port's view that it may provide airporter service by its own operation.

The Port urges that it derives the power to operate its own airporter service from RCW 53.08.020[1] and RCW 14.08.

In regard to RCW 53.08.020, the Port contends that airporter busses are "appliances" as referred to in the statute and that "facilities" means everything necessary or convenient to a transportation system. It further contends that airporter service is authorized under the provision permitting the Port to provide all customary services.

The powers granted under RCW 53.08.020 do not expressly authorize the operation of an airporter service. The Port, as a municipal corporation, is limited in its powers to those necessarily or fairly implied in or incident to the powers expressly granted, and also those essential to

---

[1]RCW 53.08.020 provides, as follows:

"A port district may construct, condemn, purchase, acquire, add to, maintain, conduct, and operate sea walls, jetties, piers, wharves, docks, boat landings, and other harbor improvements, warehouses, storehouses, elevators, grainbins, cold storage plants, terminal icing plants, bunkers, oil tanks, ferries, canals, locks, tidal basins, bridges, subways, tramways, cableways, conveyors, administration buildings, fishing terminals, together with modern *appliances and buildings* for the economical handling, packaging, storing, and transporting of freight and handling of passenger traffic, rail and *motor vehicle transfer and terminal facilities,* water transfer and terminal facilities, air transfer and terminal facilities, and any combination of such transfer and terminal facilities, commercial transportation, transfer, handling, storage and terminal facilities, and improvements relating to industrial and manufacturing activities within the district, and in connection with the operation of the facilities and improvements of the district, *it may perform all customary services* including the handling, weighing, measuring and reconditioning of all commodities received. A port district may also construct, condemn, purchase, acquire, add to and maintain facilities for the freezing or processing of goods, agricultural products, meats or perishable commodities. A port district may also construct, purchase and operate belt line railways, but shall not acquire the same by condemnation." (Italics ours.)

the declared objects and purposes of the corporation. *Christie v. Port of Olympia,* 27 Wn.2d 534, 179 P.2d 294 (1947). If there is a doubt as to whether the power is granted, it must be denied. *Pacific First Fed. Sav. & Loan Ass'n v. Pierce County,* 27 Wn.2d 347, 178 P.2d 351 (1947). *P. Lorillard Co. v. Seattle,* 8 Wn. App. 510, 507 P.2d 1212 (1973). We do not believe that the power to operate an airporter service is implied in or incident to those powers expressly granted or essential to the purposes of the Port by RCW 53.08.020.

There is no case law which interprets the statutory language in question. However, in *State ex rel. Huggins v. Bridges,* 97 Wash. 553, 166 P. 780 (1917), this court held that the power to operate a belt railway line is not fairly implied in or incidental or essential to the powers granted pursuant to Rem. Code, §§ 8165–1 and 8165–4. Those sections created port districts and authorized them to acquire, construct, maintain, operate, develop, and regulate a system of harbor improvements and rail and water transfer facilities within such districts. The court declined to hold that the language referring to rail and water transfer facilities impliedly authorized the operation of a belt line railroad. The court reasoned that this language meant *"such adjuncts and appurtenances as are necessary or convenient for the transshipment of commodities between land carriers and water carriers."* (Italics ours.) *Huggins,* at 559. Such an interpretation is clearly at odds with the Port's definition of facilities as *everything necessary* or convenient to a transportation system.

Similarly, we do not construe the term "appliance" as used in RCW 53.08.020 to include an airporter bus. Nor do we find airporter service to be a customary service in connection with the operation of the facilities and improvements of the district pursuant to the same statute.

The other statute which the Port contends authorizes its operation of airporter service is the Revised Airports Act, RCW 14.08, which states in part:

(1) Every municipality is hereby authorized . . . to . . . *operate, and regulate* such *airports* and other air navigation facilities and structures and *other property incidental to their operation,* either within or without the territorial limits of such municipality and within or without this state; . . . to . . . maintain airport facilities for the . . . *comfort and accommodation of air travelers* . . .

(Italics ours.) RCW 14.08.030(1).

*In addition to the general powers in this chapter conferred, and without limitation thereof,* a municipality which has established . . . airports . . . is hereby authorized:

. . .

(4) . . . to confer the *privileges of concessions* of supplying upon its airports goods, commodities, things, services and facilities . . .

. . .

(7) To exercise all powers *necessarily incidental* to the exercise of the general and special powers herein granted.

(Italics ours.) RCW 14.08.120.

The Port construes this act to allow airporter service as an essential element in operating an airport. In support of this contention, the Port cites *King County v. Port of Seattle,* 37 Wn.2d 338, 223 P.2d 834 (1950), and case law interpreting similar statutes in other states. *See Ex parte Houston,* 93 Okla. Crim. 26, 224 P.2d 281 (1950); *Stone v. Police Jury,* 226 La. 943, 77 So. 2d 544 (1954); and *Miami Beach Airline Serv., Inc. v. Cranden,* 159 Fla. 504, 32 So. 2d 153, 172 A.L.R. 1425 (1947). None of these cases, however, reaches the issue of whether the airport has the authority to engage in the operation of an airporter service.

In *King County. v. Port of Seattle, supra* at 348, this court recognized that "the legislature has declared its policy to be that the responsibility of providing adequate and satisfactory transportation and other public services shall belong to the Port." However, the court made that statement in conjunction with its holding that under RCW 14.08.330, King County may not exact license fees with respect to an exclusive taxicab franchise granted by the

Port. That case cannot be interpreted to mean that the Port has the authority to engage in the business of operating an airporter service. In the *Houston, Stone,* and *Miami Beach* cases, the transfer of airline passengers was viewed as a necessary incident to the competent operation of an airport under similar statutes. However, those courts approved exclusive franchises granted by the airports as a means of providing that ground transfer service, and did not imply authorization for the airports to operate their own services. Accordingly, we hold that the transfer of airline passengers to and from the airport is a necessary incident to the operation of an airport, and to provide this service, the Port may enter into concession agreements pursuant to RCW 14.08.120(4).

Since we hold that the Port is without authority to operate its own airporter service, we decline to reach the question of whether any airporter service operated by the Port would be subject to the regulation of the commission.

The second issue in this case is whether the operations of an auto transportation company with which the Port contracts to provide airporter service are subject to the regulation of the commission pursuant to RCW 81.68.

The commission and Western Tours maintain that the operations of an auto transportation company with which the Port contracts to provide airporter service are subject to the regulations of the commission pursuant to RCW 81.68. The Port contends that the commission has no jurisdiction over these operations.

Auto transportation companies are defined in RCW 81.68.010(3) as

> every corporation or person, . . . owning, controlling, operating or managing any motor propelled vehicle not usually operated on or over rails used in the business of transporting persons, and baggage, mail and express on the vehicles of auto transportation companies carrying passengers, for compensation over any public highway in this state between fixed termini or over a regular route, and not operating exclusively within the incorporated limits of any city or town: . . .

Respondents claim that Western Tours is an auto transportation company as defined by this statute. Under RCW 81.68.040, no auto transportation company may operate without a certificate of public convenience and necessity granted by the commission. Pursuant to this section, the commission seeks to regulate the airporter service provided by Western Tours.

The Port bases its contention that the commission may not regulate the airporter service on four statutes. The first statute, RCW 53.08.230, states, in part, that:

> A port district may at its option file with the county auditor a plat of any of its properties or facilities, showing thereon such private streets, alleys, . . . as the port district may wish to have treated as public for purposes of motor vehicle or other police regulations. . . . So long as any such plat . . . is on file and not vacated, the motor vehicle or other police regulations of the state . . . shall apply to such areas as though they were public streets . . .

It is stipulated by the parties that the Port properties at Sea–Tac have never been dedicated for public use and control pursuant to RCW 53.08.230. From this fact, the Port concludes that the commission is precluded from regulating the airporter service to Sea–Tac. This statute, however, bears little relevance to the issue before us since it deals only with the enforcement of motor vehicle and police regulations. Such regulations are not at issue here.

The second statute upon which the Port relies is RCW 14.08. It claims that RCW 14.08 grants the Port broad, general powers to operate and regulate airports, which would preclude the application of RCW 81.68. The Port particularly relies on RCW 14.08.370, which states that "[a]ll acts and parts of acts in conflict with this act are hereby repealed." The Port maintains that this section in combination with other sections in the chapter serve to repeal RCW 81.68 insofar as it would be applied to airporter service.

In particular, those sections of RCW 14.08 which the Port contends serve to repeal RCW 81.68 as regards airporter service are RCW 14.08.120 and RCW 14.08.160. Under RCW 14.08.120, the Port is authorized to:

(2) . . . adopt and amend all needful rules, regulations and ordinances for the management, government and use of any properties under its control, whether within or without the territorial limits of the municipality; . . . For the purposes of such management . . . such part of all highways, roads, streets, avenues, boulevards, and territory as adjoins the limits of any airport . . . shall be under like control and management of the municipality.

. . .

(4) . . . confer the privileges of concessions of supplying upon its airports goods, . . . services and facilities . . .

. . .

(6) . . . determine the charges or rental for the use of any properties under its control and the charges for any services or accommodations, and the terms and conditions under which such properties may be used . . .

(7) . . . exercise all powers necessarily incidental to the exercise of the general and special powers herein granted.

The Port argues that subsection (7) allows it to provide airporter service, subsection (6) authorizes it to regulate the rates, and subsection (2) allows it to maintain such regulation on airporter routes over public highways. The Port therefore contends that these provisions read together with RCW 14.08.370, the repealing provision, serve to repeal RCW 81.68 as to the airporter operations of the airport.

■■ We note that RCW 14.08.370 contains no express repeal but rather is only a general repealer. A general repealer does not have the effect of repealing any part of the prior act which would not be repealed in its absence. *State v. Becker,* 39 Wn.2d 94, 234 P.2d 897 (1951). Therefore, the court must determine whether there has been a repeal by implication.

"Repeals by implication are ordinarily not favored in law, and a later act will not operate to repeal an earlier act except in such instances where the later act covers

the entire subject matter of the earlier legislation, is complete in itself, and is evidently intended to supersede the prior legislation on the subject, or unless the two acts are so clearly inconsistent with, and repugnant to, each other that they cannot, by a fair and reasonable construction, be reconciled and both given effect."

*Becker,* at 97.

It is clear that the subject matter of RCW 81.68 is not covered entirely by RCW 14.08. The question then becomes whether the two acts can be reconciled. Western Tours and the commission contend they can.

The commission has suggested that reconciliation of RCW 14.08 and RCW 81.68 entails a recognition of the Port's authority to provide and maintain loading facilities for both air and ground passengers and to exercise control over the use of those facilities. Such a reconciliation also entails a recognition of the commission's jurisdiction over rates, services, and practices of airport bus service companies.

This court has recognized that "'[t]he right to deal with the question of rates and service is an entirely different matter from the right to grant franchises or abrogate the provisions thereof.'" *State ex rel. Seattle v. Seattle & Rainier Valley Ry.,* 113 Wash. 684, 693, 194 P. 820, 15 A.L.R. 1134 (1921). By splitting up the authority of the Port and the WUTC as such, no repeal of RCW 81.68 would be implied from RCW 14.08.

We do not find any of the language contained within RCW 14.08.120(2), (4), (6), and (7) to be irreconcilable with the mandate of RCW 81.68. We note that the operation of motor busses is a business affected with a public interest. *See State ex rel. Spokane United Rys. v. Department of Pub. Serv.,* 191 Wash. 595, 598, 71 P.2d 661 (1937). We do not believe that the general language contained within RCW 14.08.120 serves to repeal the specific provisions of RCW 81.68 in view of the strong public policy which underlies the latter chapter. This reasoning is particularly appropriate in the present case where, by the terms of the

concession agreement, the Port is entitled to a percentage of the revenues of the airporter operation whose rates it seeks to regulate.

The Port urges that this theory of reconciliation creates practical problems arising from a divided ability to control. We recognize that this is conceivable, although the record indicates no such practical problems during the course of the Port's concession contract with Western Tours. We cannot, however, rewrite the laws as enacted by the legislature in order to avoid practical difficulties which might arise therefrom. *See Mosebar v. Moore,* 41 Wn.2d 216, 248 P.2d 385 (1952). Because we find that a reconciliation of the two chapters is possible, we must reject the Port's contention that subsections (2), (4), (6), and (7) of RCW 14.08.120 in conjunction with RCW 14.08.370 serve to repeal RCW 81.68 as to airporter service.

The Port asserts that still another section, RCW 14.08-.160, acts as a repealer of RCW 81.68 in relation to the airporter service. This section authorizes the acceptance of federal aid and provides that the Port

> may let contracts in the manner prescribed by the federal authorities, acting under the laws of the United States, and any rules or regulations made thereunder, notwithstanding any other state law to the contrary.

RCW 14.08.160(3). The Port claims that under federal statutory and contractual provisions, the Port is obligated to assure that the airport facilities are suitably operated and to assert control over rates and services provided by concession. It is true that certain provisions of the federal statute setting forth project sponsorship requirements, 49 U.S.C. § 1718, require that the Port suitably operate and maintain facilities as well as maintain a fee and rental structure for facilities and services. *See* 49 U.S.C. § 1718(2) and (8). However, we do not consider an airporter service which runs beyond the boundaries of the airport to be a "facility" or "service" as intended by the statute. Further, the Port's contract with the United States specifically

states that the Port is not obligated "to furnish any particular non–aeronautical service at the Airport." We therefore find no conflict between the federal provisions and RCW 81.68, and no repeal can be implied from RCW 14.08-.160(3).

In addition to the implied repeal argument, the Port urges that a provision of RCW 14.08.120 indicates that the legislature did not intend that the Port contract for airporter service conform with commission regulations. This provision states that

[r]ules, regulations and ordinances shall be published as provided by general law or the charter of the municipality [and] . . . [t]hey must conform to . . . the laws of this state and the rules and regulations of the aeronautics commission of the state . . .

RCW 14.08.120(2). The Port asserts that under this statute, the *only* rules and regulations the legislature intended airport operations to conform to are those of the State Aeronautics Commission, not the Utilities and Transportation Commission.

This quoted section, however, is taken out of context. The surrounding material deals only with aerial navigation. It is not logical to infer that the legislature intended to address anything but that subject in the quoted sentence.

The Port also takes the position that airporter service cannot be subject to the control of the commission since it is part of interstate travel. The United States Supreme Court has held that this state's certification requirements for carriers cannot be applied to a common carrier in exclusively interstate commerce. *Buck v. Kuykendall,* 267 U.S. 307, 69 L. Ed. 623, 45 S. Ct. 324, 38 A.L.R. 236 (1925). The court reasoned that "[i]ts effect upon such commerce is not merely to burden but to obstruct it." *Buck,* at 316. That principle has been restated by this court in *Wall v. Smart,* 150 Wash. 333, 272 P. 711 (1928).

The question, then, is whether airporter service is part of interstate travel. The Port relies on a number of cases where motor transport service from the airport was held to

be interstate commerce. *See Hayden v. Bowen,* 404 F.2d 682 (5th Cir. 1968); *Wirtz v. Cincinnati, Newport & Covington Transp. Co.,* 375 F.2d 513 (6th Cir. 1967); and *Airlines Transp., Inc. v. Tobin,* 198 F.2d 249 (4th Cir. 1952). Respondents cite other cases in which the opposite result was reached. *See Mateo v. Auto Rental Co.,* 240 F.2d 831 (9th Cir. 1957); *Cederblade v. Parmelee Transp. Co.,* 94 F. Supp. 965 (N.D. Ill. 1947), *aff'd on other grounds,* 166 F.2d 554 (7th Cir. 1948).

■ Ultimately, "[t]he decision must rest on the particular facts of each case." *Mateo,* at 833. The facts before us lead us to the conclusion that the airporter service provided by Western Tours is not part of interstate commerce.

In determining whether a local motor transport service moves in interstate commerce, the courts have applied the test of whether the service is an integral part of interstate commerce. *United States v. Yellow Cab Co.,* 332 U.S. 218, 91 L. Ed. 2010, 67 S. Ct. 1560 (1947); *Mateo v. Auto Rental Co., supra.* The courts have looked to a number of factors in making this determination. These are enunciated in *Mateo* as follows:

> Such factors as the nature and extent of the work claimed to be part of interstate commerce, the structure and operations of the company, the competitive status of the firm, the relationship with those clearly engaged in interstate transportation, and the geographical location of the local termini are all relevant.

*Mateo,* at 833.

One factor which the *Mateo* court considered to be particularly significant was the amount of competition faced by an airporter service. The *Mateo* court held that the airporter service in question was not part of interstate commerce, stating that

> it would seem that common understanding dictates the conclusion we reach. When a person arrives at International Airport; . . . and is free to select from a multitude of choices a means of transportation to his local destination, he has "in the commonly accepted sense of the transportation concept," arrived in Hawaii. Those who

thereafter furnish him transportation are engaged in activity of a purely local nature.

(Footnote omitted.) *Mateo,* at 835; *see United States v. Capital Transit Co.,* 325 U.S. 357, 89 L. Ed. 1663, 65 S. Ct. 1176 (1945). We find the emphasis which the *Mateo* court placed on the competition factor to be appropriate in the present case. When a passenger arrives at Sea–Tac, he or she is free to choose from a variety of transportation alternatives. In addition to the airporter service provided by Western Tours, a passenger may leave the airport by taxicab, bus service, or limousine service provided by hotels and motels. There is a parking garage facility which allows passengers to provide their own transportation by owned or leased cars to their ultimate destinations.

In light of these alternatives, we do not find that the airporter service in question is an integral part of interstate commerce for the reasons discussed in *Mateo.*

■ Having rejected the arguments regarding implied repeal and interstate commerce, we are persuaded that the airporter service must conform to commission regulations due to the mandate of RCW 14.08.330, which provides, in part, that

> [e]very airport and other air navigation facility controlled and operated by any municipality, or jointly controlled and operated pursuant to the provisions of this chapter, shall, subject to federal and *state laws, rules and regulations,* be under the exclusive jurisdiction and control of the municipality or municipalities controlling and operating it and no other municipality in which such airport or air navigation facility shall have any police jurisdiction of the same or any authority to charge or exact any license fees or occupation taxes for the operations thereon.

(Italics ours.)

This section subordinates Port regulatory power to applicable state law. Our view is consistent with the decision in *State v. Ferry Line Auto Bus Co.,* 93 Wash. 614, 161 P. 467 (1916), where a corporation operating a bus service on the streets of Seattle was not relieved of the necessity of

complying with the state jitney bus act, even though the service was conducted in accordance with a contract with the Port of Seattle. *See also Mosebar v. Moore,* 41 Wn.2d 216, 248 P.2d 385 (1952).

We therefore conclude that the commission is empowered to regulate the rates, services, and practices in relation to airport bus service.

The next issue on appeal is whether RCW 81.68.040 permits a present certificate holder to block the issuance of an additional certificate by a mere showing of willingness to provide such services. In its trial brief, the Port requested that the court issue a declaratory judgment that an existing certificate holder cannot prevent the issuance of another certificate absent a showing that it *can and will in fact* provide satisfactory service pursuant to RCW 81.68.040.[2] The Port contended that this requirement is not to be confused with the standard set out in RCW 81.68.030,[3] which the Port contends provides that an existing certificate holder may *block revocation* of a certificate by a mere showing of willingness to provide the service.

It can be implied from the Port's argument that it seeks to prevent the situation where a certificate holder's contract for use of Port loading facilities is not renewed by the Port and the certificate holder is able to block the issuance of a certificate to another company by merely showing a willingness to continue to provide adequate service. Under the

---

[2] RCW 81.68.040 provides, in part: "The commission shall have power, after hearing, when the applicant requests a certificate to operate in a territory already served by a certificate holder under this chapter, only when the existing auto transportation company or companies serving such territory will not provide the same to the satisfaction of the commission, . . ."

[3] RCW 81.68.030 states, in part:
"The commission may, at any time, by its order duly entered after a hearing had upon notice to the holder of any certificate hereunder, and an opportunity to such holder to be heard, at which it shall be proven that such holder wilfully violates or refuses to observe any of its proper orders, rules or regulations, suspend, revoke, alter or amend any certificate issued under the provisions of this chapter, but the holder of such certificate shall have all the rights of rehearing, review and appeal as to such order of the commission as is provided for in RCW 81.68.070."

"willingness" standard, the certificate holder could block the certification of another company with whom the Port wishes to contract for the use of its curbside loading facilities, even if the loss of the concession for the use of the Port facilities by the certificate holder renders it unable (but not unwilling) to provide satisfactory service.

The trial court did not rule on this issue, and we believe it correctly declined to do so. The issue goes beyond the scope of the pleadings. Furthermore, the question is not ripe for declaratory judgment.

■ In the absence of issues of broad overriding public import, RCW 7.24, the Uniform Declaratory Judgments Act, should not be applied where there is no justiciable controversy. *Diversified Indus. Dev. Corp. v. Ripley,* 82 Wn.2d 811, 514 P.2d 137 (1973). The issue before us rests on a speculative factual basis; it presupposes that the Port will place Western Tours' contract rights up for bid, that Western Tours will not prevail in the bidding process, and that it will move to block the issuance of an additional certificate by the commission. The issue appears to be founded on a hypothetical factual situation, and we do not deem it appropriate to issue a declaratory judgment as to this matter.

The last issue before this court is whether the evidence supports the trial court's finding that Western Tours' airporter services have been adequate and satisfactory to the Port. Finding of fact No. 8 states:

> The auto transportation services of Western Tours, which have been rendered continuously since 1964 between Seattle and Seattle–Tacoma International Airport, have been adequate and satisfactory to the Port of Seattle.

■ There is no evidence at all in the stipulated statement of facts that lends support to this finding. Respondents point out that all parties admit that Western Tours has complied with all regulations of the WUTC. This fact does not support a finding that Western Tours' services

have been satisfactory *to the Port.* We therefore reverse this finding of the trial court.

The judgment of the trial court is affirmed in part and reversed in part.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

Reconsideration denied October 12, 1979.