

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 40422-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LANISHA MARIE JACKSON (TOMEO) | ) | UNPUBLISHED OPINION |
| also known as | ) | |
| LANISHA M. TOMEOSHELTON, | ) | |
| LANISHA M. SHELTON, | ) | |
| LANISHA MARIE JACKSON, | ) | |
| and LANISHA MARIE TOMEO, | ) | |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Lanisha Jackson Tomeo appeals her conviction of second degree assault. Tomeo argues that defense counsel was ineffective for failing to request a self-defense or revived self-defense jury instruction at trial because there was evidence to support a self-defense theory. The State responds that a self-defense theory was not viable under these circumstances and counsel's strategic decision to focus on stronger defenses and forego self-defense was reasonable.

We affirm.

BACKGROUND

When considering an ineffective assistance of counsel claim based on counsel's failure to request a jury instruction, we first determine whether the instruction was warranted by reviewing the entire record in the light most favorable to the defendant. *State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000). As such, the following narrative presents Tomeo's version of events.

Lanisha Tomeo and her 14-year-old daughter were driving home after dropping off two of Tomeo's other children at school. Tomeo became scared when she noticed a car aggressively following her. The other driver, Christina Nadeau, turned when Tomeo turned and continued straight when Tomeo continued straight. Tomeo pulled over and Nadeau drove past very slowly. Once Nadeau passed, Tomeo reentered traffic. Three blocks later, Nadeau pulled over and rolled down her window. Instead of driving away, Tomeo pulled alongside Nadeau and rolled down the passenger window to find out why Nadeau had been following her.

Nadeau began swearing loudly at Tomeo, shouting threats and insults. Nadeau wanted Tomeo to be scared. Unbeknownst to Tomeo, Nadeau pulled over and parked in front of her own home. So, when Nadeau got out of her car to go inside, Tomeo also exited her vehicle, believing that Nadeau was inviting a physical altercation. Tomeo felt provoked and reacted to Nadeau's words out of fear and to protect herself and her daughter.

Nadeau testified that, as she walked toward her house, Tomeo struck her in the neck from behind. However, Tomeo testified that she could not recall which party became physical first. According to Tomeo, she and Nadeau were in the middle of the street coming toward each other. Tomeo walked toward Nadeau until they were facing each other. Words were exchanged and they started grabbing and pulling each other's hair. Both women punched each other.

At some point, Nadeau stumbled, fell, and hit her head against a retaining wall, suffering a facial fracture. Nadeau remembered Tomeo tackling her. A neighbor saw Nadeau trip without being pushed but later denied seeing that part of the altercation. Tomeo's daughter then got out of the car, became physically involved in the altercation, and was bit in the leg by Nadeau. Tomeo told her daughter it was time to go and they left.

*Procedure*

Tomeo was charged with second degree assault and pleaded not guilty. Just before trial, the State sought to exclude evidence or reference to other defenses and any affirmative defense not disclosed prior to trial. Defense counsel agreed, stating the defense's theory would be general denial. Defense counsel acknowledged that self-defense was not a viable strategy, but he planned to elicit testimony that Tomeo was goaded into the altercation.

At trial, defense counsel's theory was general denial; he did not pursue a self-defense theory. During voir dire, a juror raised the notion of self-defense and counsel declined to engage that line of questioning, referring to it as a "rabbit hole." RP at 92. In opening arguments, defense counsel set the stage to poke holes in the State's case-in-chief. He explained that Tomeo was goaded into the altercation and evidence would show that Nadeau tripped and fell into a retaining wall, and not that she was pushed. Then, throughout trial, defense counsel elicited testimony from officers and Nadeau that Nadeau goaded Tomeo and Tomeo's daughter throughout the altercation.

After the State rested, defense counsel requested a jury instruction for the lesser included offense of fourth degree assault, arguing the State failed to prove Tomeo was responsible for Nadeau's facial fracture. The court denied the request. Defense counsel did not request a self-defense or revived self-defense jury instruction. The jury found Tomeo guilty of second degree assault.

Tomeo appeals.

## ANALYSIS

1. INEFFECTIVE ASSISTANCE OF COUNSEL

Tomeo argues that defense counsel rendered ineffective assistance by failing to seek a self-defense or revived self-defense jury instruction because Nadeau's threatening words and conduct created a reasonable fear justifying self-defense.

4

We conclude that defense counsel was not ineffective for two reasons. First, Tomeo was not entitled to a self-defense jury instruction because her fear and response were not objectively reasonable; and second, Tomeo fails to prove the absence of any strategic reason for defense counsel's performance.

*A. Legal Principles*

The Sixth Amendment to the United States Constitution and art. I, § 22 of the Washington State Constitution guarantee effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Claims of ineffective assistance of counsel are reviewed de novo. *State v. Hamilton*, 179 Wn. App. 870, 879, 320 P.3d 142 (2014).

A successful claim requires the defendant to demonstrate two components: that counsel's performance was deficient, and the deficient performance caused prejudice. *Strickland*, 466 U.S. at 687. Counsel's representation is deficient if, after considering all circumstances, it falls "'below an objective standard of reasonableness.'" *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *Strickland*, 466 U.S. at 688). Further, prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the trial would have been different. *Grier*, 171 Wn.2d at 34. If either prong is not satisfied, the inquiry ends. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

To prevail on an ineffective assistance claim, a defendant must overcome a "strong presumption that counsel's performance was reasonable." *Id*. Additionally, the

defendant "must demonstrate the absence of a legitimate strategic or tactical reason for counsel's performance." *State v. Johnston*, 143 Wn. App. 1, 17, 177 P.3d 1127 (2007). Accordingly, "[w]hen counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Kyllo*, 166 Wn.2d at 863.

When deficient performance is based on counsel's failure to request a self-defense jury instruction, a defendant must show that they were entitled to the instruction at trial. *See State v. Cienfuegos*, 144 Wn.2d 222, 227, 25 P.3d 1011 (2001). To establish a defendant's entitlement to a self-defense jury instruction, there must be some evidence, "from 'whatever source' " regarding the elements of self-defense. *State v. Tullar*, 9 Wn. App. 2d 151, 155-56, 442 P.3d 620 (2019) (quoting *State v. Walker*, 164 Wn. App. 724, 729 n.5, 265 P.3d 191 (2011). This evidence is viewed in the light most favorable to the defendant. *State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000). If the defendant would not have been entitled to an instruction, defense counsel did not perform deficiently because the request for the instruction would not have been granted. *See State v. Azevedo*, 31 Wn. App. 2d 70, 84, 547 P.3d 287 (2024).

*B. Whether a Self-Defense Instruction was Warranted*

We consider first whether a request for a self-defense instruction would have succeeded.

Tomeo argues she was entitled to a self-defense instruction because Nadeau was aggressively following Tomeo in her car, which constituted more than just words alone

and amounted to a physical threat.  The State argues that Tomeo failed to establish a reasonable threat of imminent harm, and her actions were objectively unreasonable because words alone do not constitute adequate provocation.

Self-defense is properly asserted if the defendant subjectively and reasonably perceives a threat of imminent harm.  *See* RCW 9A.16.020(3); *State v. Grott*, 195 Wn.2d 256, 266, 458 P.3d 750 (2020).  The defendant's belief is reasonable if "a reasonable person in the defendant's situation could have believed that such threat was present." *State v. Walker*, 136 Wn.2d 767, 772, 966 P.2d 883 (1998).  This objective prong of the inquiry "'keeps self-defense firmly rooted in the narrow concept of necessity.'"  *Id.*  at 772-73 (quoting *State v. Janes*, 121 Wn.2d 220, 240, 850 P.2d 495 (1993)).  Verbal provocation alone does not justify using force in self-defense.  *State v. Riley*, 137 Wn.2d 904, 912, 976 P.2d 624 (1999).  Generally, self-defense is inconsistent with mutual combat.  *Tullar*, 9 Wn. App. 2d at 155 n.2.

Here, there is evidence that Tomeo subjectively perceived a threat of imminent harm.  As such, the inquiry turns to whether that fear and corresponding reaction was objectively reasonable.

According to Tomeo, the physical altercation began after she was provoked by Nadeau's words.  In fact, Nadeau admitted that she intended her words to scare Tomeo and her daughter.  Even so, verbal provocation alone does not justify using force in self-defense.  *Riley*, 137 Wn.2d at 912.

Tomeo also felt fear because of Nadeau's aggressive driving. However, this evidence does not establish a reasonable threat of imminent harm because when Nadeau pulled over, nothing prevented Tomeo from simply driving away.

Finally, there is no evidence indicating that Nadeau initiated physical contact. Nadeau testified that Tomeo hit her first. Tomeo could not recall at trial who became physical first.

In sum, although the record reflects Tomeo's subjective fear when the evidence is construed in her favor, there is no evidence suggesting that her fear was objectively reasonable or necessitated a physical response. A reasonable and prudent person would have avoided the altercation by continuing to drive past Nadeau when she stopped. As such, Tomeo was not entitled to a self-defense jury instruction.

Tomeo further argues that she was entitled to a revived self-defense instruction. Had the court given a self-defense instruction, Tomeo predicts that the State would have attempted to negate the instruction by requesting a first aggressor instruction. In return, the first aggressor instruction could be subsequently negated if Tomeo was entitled to a revived self-defense instruction. Indeed, a party that provokes or initiates a physical altercation can revive their right to self-defense "if that person in good faith withdraws from the aggression in such time and manner as to clearly apprise the other person that they intend to disengage in further aggression." *State v. Fleeks*, 25 Wn. App. 2d 341, 353, 523 P.3d 220 (2023). However, Tomeo's argument relies on a theoretical series of

events too attenuated for review. *See Port of Seattle v. Wash. Utils. and Transp. Comm'n*, 92 Wn.2d 789, 806, 597 P.2d 383 (1979) (declining to review an issue founded on a hypothetical chain of facts).

Finally, Tomeo argues that defense counsel was ineffective by failing to argue that evidence supporting a self-defense claim was not inadmissible hearsay. The additional evidence Tomeo refers to are verbal threats allegedly made by Nadeau, which contributed to spurring the altercation. However, as discussed above, provocation through words alone does not justify self-defense. *Riley*, 137 Wn.2d at 912. As such, additional evidence of verbal threats would not change the analysis; accordingly, this argument fails.

### C. Strategic Decision

Tomeo argues that failing to request a self-defense instruction was not a tactical decision because evidence supported the claim and counsel should have recognized the ability to request the instruction based on testimony. The State suggests that counsel had tactical reasons to exclude the evidence because it could have spurred impeachment. Moreover, given the circumstances and the lack of credible evidence, defense counsel's strategy to focus on general denial and question the victim's credibility was reasonable. In reply, Tomeo asserts the State's theory is flawed because counsel demonstrated his willingness to present a defense theory absent any basis in the evidence when he requested the lesser-included instruction.

9

A lawyer's performance is without strategic or tactical reason when it is based on an erroneous understanding or application of the law or eases the burden of the State in its prosecution. *See Kyllo*, 166 Wn.2d at 869-71. The defendant must overcome a "strong presumption that counsel's performance was reasonable." *Kyllo*, 166 Wn.2d at 862. Counsel has "no duty to pursue strategies that reasonably appear unlikely to succeed." *State v. Brown*, 159 Wn. App. 366, 371, 245 P.3d 776 (2011). Furthermore, ineffective assistance of counsel is not judged retrospectively or in hindsight. *Grier*, 171 Wn.2d at 43.

Here, several comments by defense counsel make it evident that the attorney made a conscious decision not to pursue a theory of self-defense based on his evaluation of the evidence and selection of alternative theories. Before trial, defense counsel informed the court "we are going with general denial, but one thing that we are eliciting is that my client was essentially goaded, but it doesn't rise to the level of self-defense." RP at 7-8. During voir dire, a juror raised the notion of self-defense and counsel declined to engage that line of questioning, referring to it as a "rabbit hole." RP at 92. And, in opening statements, counsel set the stage to deny the State's prima facie case. He explained that not only was Tomeo goaded into the altercation, but evidence would show that Nadeau may have suffered the fracture when she tripped and fell into a retaining wall. At trial, defense counsel elicited testimony from officers and Nadeau that she goaded Tomeo and Tomeo's daughter throughout the altercation.

10

Originally, defense counsel intended to premise the general denial theory on the neighbor's testimony that Nadeau suffered the facial fracture when she tripped and fell into a retaining wall—not that she was pushed into it by Tomeo. However, the neighbor did not testify as expected at trial. Nevertheless, defense counsel continued to poke holes and illuminate inconsistencies in the evidence that could create reasonable doubt.

After the State rested, defense counsel pivoted and requested a jury instruction for the lesser included offense of fourth degree assault, arguing the State failed to prove Tomeo was responsible for the fracture. The request was denied. Defense counsel did not request a self-defense jury instruction; nor was he required to. The law and analysis presented above indicate that a self-defense strategy in response to verbal provocation would "reasonably appear unlikely to succeed." *See Brown*, 159 Wn. App. at 371.

The course of decisions and actions by counsel shows strategic and reasonable pursuit of certain theories but not of others based on circumstances and evidence available at the time. As such, Tomeo cannot overcome the strong presumption that counsel chose a reasonable strategy. *See Kyllo*, 166 Wn.2d at 862. Nor has she met her burden to show the strategy was based on an erroneous understanding or application of the law or eased the burden of the State in its prosecution. *See Kyllo*, 166 Wn.2d at 869-71. Therefore, defense counsel's performance was not deficient and Tomeo's claim for ineffective assistance of counsel fails.

11

Because the record does not support that Tomeo was entitled to a self-defense instruction, and because her attorney's decision to forego requesting such an instruction was a legitimate strategy under the circumstances, her attorney's performance was not deficient and Tomeo's claim of ineffective assistance of counsel fails.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Birk, J.[†]

---

[†] The Honorable Ian S. Birk is a Court of Appeals, Division One, judge sitting in Division Three pursuant to CAR 21(a).